CURTIS K., a Minor, by his Mother and Next Friend, DELORES K., and Delores K., on her Own Behalf, Plaintiff,

v.

SIOUX CITY COMMUNITY SCHOOL DISTRICT and Western Hills Area Education Agency 12, Defendants.

DAVID D., a Minor, by his Mother and Next Friend, ZOE D., and Zoe D., on her Own Behalf, Plaintiff,

v.

SIOUX CITY COMMUNITY SCHOOL DISTRICT and Western Hills Area Education Agency 12, Defendants.

AMIE R., a Minor, by her Mother and Next Friend, DIANE D., and Diane D., on her Own Behalf, Plaintiff,

v.

SIOUX CITY COMMUNITY SCHOOL DISTRICT and Western Hills Area Education Agency 12, Defendants.

MICHAEL H., a Minor, by his Mother and Next Friend, NANCY W., and Nancy W., on her own behalf, Plaintiff,

v.

SIOUX CITY COMMUNITY SCHOOL DISTRICT and Western Hills Area Education Agency 12, Defendants.

GEOFF P., a Minor, by his Mother and Next Friend, LAURIE P., and LAURIE P., on her Own Behalf, Plaintiff,

v.

SIOUX CITY COMMUNITY SCHOOL DISTRICT and Western Hills Area Education Agency 12, Defendants.

LUCAS P., a Minor, by his Mother and Next Friend, LAURIE P., and Laurie P., on her Own Behalf, Plaintiff,

v.

SIOUX CITY COMMUNITY SCHOOL DISTRICT and Western Hills Area Education Agency 12, Defendants.

FARON K., a Minor, by his Mother and Next Friend, DELORES K., and Delores K., on her own behalf, Plaintiff,

v.

SIOUX CITY COMMUNITY SCHOOL DISTRICT and Western Hills Area Education Agency 12, Defendants.

Nos. 94–4085 to 94–4091.

United States District Court, N.D. Iowa, Western Division.

June 29, 1995.

Al Sturgeon, Sioux City, IA, for plaintiffs.

James C. Hanks of Klass, Hanks, Stoos, Stoik, Mugan & Villone, Sioux City, IA, for

defendants Sioux City Community School Dist. and the Western Hills Area Educ. Agency, Area 12.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND .................... 1202
II. STANDARDS FOR SUMMARY JUDGMENT ............................. 1202
III. FINDINGS OF FACT .................................................. 1204
 A. Undisputed Facts ................................................ 1204
 B. Disputed Facts ................................................. 1205
IV. LEGAL ANALYSIS .................................................. 1205
 A. Purpose And Provisions Of The IDEA ......................... 1205
 B. Judicial Review Under The IDEA .............................. 1206
 C. Claims For Attorneys Fees Under The IDEA .................... 1206
 1. Fee claims versus judicial review ......................... 1208
 2. Fee claims versus judicial review under the IDEA ......... 1208
 D. The Statute Of Limitations For IDEA Attorneys Fees Actions ........... 1212
 1. The method for selecting the proper statute of limitations ........... 1212
 2. Prior decisions determining the applicable statute of limitations ....... 1213
 3. The proper statute of limitations here ........................... 1216
 a. The parties' proffers .......................................... 1216
 b. Application of the Wilson analysis ............................. 1217
 c. The proper statute of limitations here ......................... 1220
V. CONCLUSION ...................................................... 1221

---

The issue in these lawsuits for attorney fees filed on behalf of seven school age children with disabilities is more than simply a question of whether one attorney will get paid for services rendered, and instead raises serious repercussions for the vindication of the rights of disabled children to obtain an appropriate public education. The defendants' motions for summary judgment in these lawsuits are also of significance beyond mere disposition of these cases, because they present an issue of first impression in this circuit. That question is, what statute of limitations applies to an action for attorneys fees under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*? Congress has provided no answer, and the array of answers offered by other courts to consider the question, coupled with the lack of any controlling decision from the Eighth Circuit Court of Appeals or any persuasive decision from a district court of this circuit, compel this court's entry into the fray. The variety of judicial determinations of the statute of limitations applicable here is particularly disconcerting when the Supreme Court has said that " '[f]ew areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations.' " *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 1941, 85 L.Ed.2d 254 (1985) (quoting *Chardon v. Fumero Soto,* 462 U.S. 650, 667, 103 S.Ct. 2611, 2622, 77 L.Ed.2d 74 (1983) (Rehnquist, J., dissenting)). In the absence of a congressional statement making for the fervently desired clarity on the issue, however, the court must draw upon the analytical tools supplied by the Supreme Court to fill the gap.

Plaintiffs in these cases, seven disabled children and their parents, have filed actions to recover attorney fees and costs asserting that they are prevailing parties in administrative proceedings under the IDEA. Defendants, a community school district and an area education authority, have moved for summary judgment in each case on the ground that the plaintiffs' suits for fees are barred by the applicable statute of limitations, which defendants assert is a 30–day limitations period "borrowed" from the judicial review provisions of the Iowa Administrative Procedures Act. Plaintiffs counter that a longer statute of limitations is both appropriate and necessary in light of the policies behind the IDEA.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

The plaintiffs in each of the actions captioned above filed a complaint on October 5, 1994, seeking to recover attorney fees and costs incurred in administrative proceedings under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Plaintiffs are disabled children and their parents who prevailed in administrative proceedings in which they asserted that defendants, the Sioux City Community School District (the District) and the Western Hills Area Education Agency, Area 12 (the Agency), had improperly excluded each child from school or had denied the child due process in the formulation or administration of the child's individualized education program (IEP), or both, in violation of the IDEA. The administrative proceedings in each case terminated, either by settlement or by rendering of an administrative decision without further appeal between mid-October of 1992 and March of 1993. The decision or settlement in each case granted significant relief to each of the plaintiffs. In their complaints, the plaintiffs therefore seek recovery of attorney fees and costs as prevailing parties in the administrative proceedings pursuant to 20 U.S.C. § 1415(e)(4)(B).

Defendants acknowledged and accepted service in each case, and, on November 7, 1994, answered each of the complaints. In each case, defendants asserted as affirmative defenses, *inter alia,* that the complaint was time-barred by the applicable statute of limitations. On March 8, 1995, Chief Magistrate Judge John A. Jarvey entered a scheduling order in each case establishing a deadline of June 1, 1995, for dispositive motions. The District and the Agency filed motions for summary judgment in each case on June 1, 1995, asserting that each complaint is time-barred by application of the most analogous state statute of limitations, a thirty-day statute of limitations for judicial review found in the Iowa Administrative Procedure Act, Iowa Code § 17A.19(3).

Plaintiffs resisted the motions for summary judgment on June 14, 1995, contending that the most appropriate state statute of limitations is a "catch-all," five-year limitations period found in Iowa Code § 614.1(4). Plaintiffs also suggest that this limitations period might be further extended by Iowa Code § 614.8, which extends any other applicable statute of limitations in favor of mentally ill persons "so that they have one year from and after the termination of such disability within which to commence said action." Iowa Code § 614.8.

The court held oral arguments on defendants' motions for summary judgment on June 27, 1995. Plaintiffs were represented by counsel Al Sturgeon of Sioux City, Iowa. Defendants were represented by counsel James C. Hanks of Klass, Hanks, Stoos, Stoik, Mugan & Villone, in Sioux City, Iowa. Both counsel ably argued their respective positions, and while the arguments were spirited, counsel were very responsive to the numerous questions posed to them by the court. The court finds this matter fully submitted, and therefore turns first to the standards applicable to disposition of the defendants' motions for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[1] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here the plaintiffs, and give the plaintiffs the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving parties, here the defendants, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The defendants, as the non-moving parties, are not required by *Rule 56* to support their motions with affidavits or other similar materials negating their opponents' claim. *Id.*

"When a moving party has carried its burden under *Rule 56(c)*, its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. The plaintiffs are therefore required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence

---

1. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the plaintiffs, the nonmoving parties, fail to make a sufficient showing of an essential element of a claim with respect to which they have the burden of proof, then the defendants are "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the defendants' motions for summary judgment.

### III. FINDINGS OF FACT
#### A. Undisputed Facts

The court will not devote itself to an extensive discussion of the facts in each case for a number of reasons: first, owing to plaintiffs' resistances to the motions for summary judgment, few facts are in dispute; second, the majority of facts material to the present discussion are similar in each case, and are not in dispute; and, third, defendants have moved for summary judgment on an essentially legal ground, the applicable statute of limitations, thus, the court should avoid making extensive findings of fact that are not pertinent to its decision. If the statute of limitations promoted by the defendants is indeed applicable, none of these actions was timely filed and there can be no genuine dispute as to that fact. However, some factual background is essential to an understanding of the posture of the plaintiffs' complaints.

Each of the plaintiffs is either a disabled child within the meaning of IDEA or the parent of such a child. Each plaintiff challenged the exclusion of a disabled child from school or challenged denial of the child's right to due process in the formulation or administration of the child's individualized education program (IEP), or both, in administrative proceedings before the Iowa Department of Public Education. In each case, upon termination of those administrative proceedings, between mid-October of 1992 and March of 1993, either by settlement or by rendering of an administrative decision without further appeal, each of the plaintiffs was granted significant relief.[2] The parties do not dispute at this time whether or not the plaintiffs were "prevailing parties" within the meaning of 20 U.S.C. § 1415(e)(4)(B).

In each of the proceedings, plaintiffs were represented by Sioux City, Iowa, attorney Al Sturgeon. Upon termination of the proceedings, each of the plaintiffs made a request to the defendants for payment of costs and attorney fees. None of the plaintiffs received a favorable response to that request.

**2.** Three of the cases terminated with decisions by the administrative law judge (ALJ) after hearings. Those cases were as follows: In re Faron K., terminated by ALJ's decision dated October 29, 1992; In re Curtis K., terminated by ALJ's decision dated November 5, 1992; and In re David D., terminated by ALJ's decision dated December 3, 1992. The remaining cases were terminated by entry of the parties into a consent agreement. Those cases were as follows: In re Michael H., terminated by agreement dated November 12, 1992; In re Amie R., terminated by agreement dated March 3, 1993; In re Geoff P., terminated by agreement dated March 4, 1993; and In re Lucas P., terminated by agreement dated March 17, 1993.

## B. Disputed Facts

The plaintiffs do not dispute any of the facts set out by the defendants. However, plaintiffs do assert that material facts in dispute concern the value of the services rendered to plaintiffs by plaintiffs' attorney, the hours of service, and the total amount of fees and costs therefore due. The court agrees that these matters are in dispute, and certainly material to the disposition of plaintiffs' claims on the merits if those claims are not time-barred, but finds that they are not material to disposition of the narrow question upon which defendants have moved for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

## IV. LEGAL ANALYSIS

The court finds it useful to begin its analysis with a brief examination of the purpose of the IDEA and with a more extended discussion of the nature of substantive and fee-claim actions under that statute before turning to the question of the statute of limitations applicable to the fee-claim action here.

## A. Purpose And Provisions Of The IDEA

■ In passing the IDEA, Congress's goal was that "all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c); *Florence County Sch. Dist. Four v. Carter,* — U.S. —, —, 114 S.Ct. 361, 365, 126 L.Ed.2d 284 (1993) (the purpose of the IDEA is "to ensure that children with disabilities receive an education that is both appropriate and free."); *School Committee of Burlington v. Department of Educ. of Mass.,* 471 U.S. 359, 373, 105 S.Ct. 1996, 2004, 85 L.Ed.2d 385 (1985) (same); *Light v. Parkway C–2 Sch. Dist.,* 41 F.3d 1223, 1226 (8th Cir.1994) (quoting § 1400(c) of the IDEA as codifying Congress's goal), *cert. denied,* — U.S. —, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995); *Dell v. Board of Educ., Tp. High Sch. Dist. 113,* 32 F.3d 1053, 1055 (7th Cir.1994) (citing *Florence County Sch. Dist. Four,* — U.S. at —, 114 S.Ct. at 365, and *School Comm. of Burlington,* 471 U.S. at 373, 105 S.Ct. at 2004).[3] To meet this goal, Congress provided federal funds to "assist State and Local efforts to provide programs to meet the educational needs of handicapped children in order to assure equal protection of the law." 20 U.S.C. § 1400(b)(9). In this respect, the IDEA is like its predecessor, the Education For All Handicapped Children Act of 1975 (EAHCA). *Light,* 41 F.3d at 1226 (IDEA like EAHCA provides federal funds to states whose policies "assure[ ] all children with disabilities the right to a free appropriate public education," citing 20 U.S.C. § 1412(1)).

■ To receive federal funding, however, the participating states must comply with the IDEA's procedures guaranteeing a reasonable probability of educational benefits

---

3. Although the goal of the IDEA has remained consistent throughout its history, the act providing for and protecting the rights of disabled children to public education has gone through a number of metamorphoses. The IDEA came into being in 1970 as the "Education of the Handicapped Act." Pub.L. 91–230, Title VI, § 601, April 13, 1970, 84 Stat. 175. Significant additions to the EHA were made in 1975 with the passage of the "Education for All Handicapped Children Act of 1975," or EAHCA. Pub.L. 94–142, § 3(a), November 29, 1975, 89 Stat. 774. In 1986, another significant amendment to the act was embodied in the "Handicapped Children's Protection Act of 1986," or HCPA. Pub.L. 99–372, § 1, Oct. 8,.1986, 100 Stat. 796. This was followed, in 1988, by the passage of the "Handicapped Programs Technical Amendments Act of 1988," or HPTA. Pub.L. 100–630, § 1, Nov. 7, 1988, 102 Stat. 3289. In 1991, the current form of the act was passed, Pub.L. 102– 119, October 7, 1991, 105 Stat. 587, in part officially changing the name of the act by substituting "Individuals with Disabilities Education Act" for "Education of the Handicapped Act." Pub.L. 102–119, § 25(b). This change in names had been largely achieved in amendments in 1990, which provided that "Any other Act and any regulation which refers to the Education of the Handicapped Act shall be considered to refer to the Individuals with Disabilities Education Act." Pub.L. 101–476, § 901(a)(3). In light of this amendment, this court will consistently refer to all of these acts as "the IDEA" unless pointing out specific changes inaugurated by one of the other differently named acts.

In addition to these named acts, the underlying act was also amended in 1974, by Pub.L. 93–380, Aug. 21, 1974, 88 Stat. 579; in 1977, by Pub.L. 95–49, June 17, 1977, 91 Stat. 230; in 1983, by Pub.L. 98–199, Dec. 2, 1983, 97 Stat. 1357; in 1990, by Pub.L. 101–476, Oct. 1, 1990.

and supportive services at public expense. 20 U.S.C. § 1412; *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 188–89, 102 S.Ct. 3034, 3041–42, 73 L.Ed.2d 690 (1982); *Johnson v. Bismarck Public Sch. Dist.*, 949 F.2d 1000, 1002 (8th Cir.1991) ("The [IDEA] provides federal funding to state and local agencies for the education of handicapped children and conditions that funding upon compliance with extensive procedural and substantive requirements," citing generally *Hendrick Hudson Dist. Bd. of Educ.*). The education provided each disabled child must be uniquely "appropriate" for the child's educational needs; therefore the state must prepare an "individualized education program," or IEP, for each child through joint participation of the local education agency, the child's teacher, and the child's parents. 20 U.S.C. §§ 1401(a)(18)–(20), 1412(4), 1414(a)(5); *Johnson*, 949 F.2d at 1002.

### B. Judicial Review Under The IDEA

■ Section 1415 of the IDEA establishes procedures for challenges to the provision of appropriate educational programs to disabled children through a series of administrative levels,[4] culminating in a right to challenge administrative decisions through a civil action in either state or federal court. 20 U.S.C. § 1415(e)(2). Upon judicial review, the courts examine the "obligations, largely procedural in nature, which are imposed upon recipient States by Congress," and may not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Hendrick Hudson Dist. Bd. of Educ.*, 458 U.S. at 206, 102 S.Ct. at 3051; *Dell*, 32 F.3d at 1057.

The Supreme Court elaborated further on the scope of the court's review:

[A] court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive

educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Hendrick Hudson Dist. Bd. of Educ.*, 458 U.S. at 206–207, 102 S.Ct. at 3051. The Seventh Circuit Court of Appeals has opined that the reason for this limited review of administrative decisions made under the IDEA and its precursors is " '[b]ecause judges are not trained educators.' " *Dell*, 32 F.3d at 1058 (quoting *Board of Educ. of Community Consol. Sch. Dist. No. 21 v. Illinois State Bd. of Educ.*, 938 F.2d 712, 715 (7th Cir.1991), *cert. denied*, 502 U.S. 1066, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992)).

### C. Claims For Attorneys Fees Under The IDEA

■ Additionally, § 1415(e)(4)(B) of the IDEA now provides for an award of reasonable attorney fees and costs to parents who prevail in the administrative process or in court, and consequently provides an independent cause of action to recover such fees and costs, but this has not always been so. In 1984, the United States Supreme Court ruled that attorney fees were not available to a prevailing party in an action brought under the IDEA, or the EHA, as it was then known. *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Two years later, in part in response to the decision in *Smith*, Congress enacted the Handicapped Children's Protection Act (HCPA), which legislatively overruled *Smith* and specifically provided that "[i]n any action or proceeding brought under this subsection, the court in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B); *see, e.g., Counsel v. Dow*, 849 F.2d 731, 739 (2d Cir.1988) (Congress in the first instance sought to encourage, assist, and make whole "those plaintiffs and attorneys who worked to vindicate the rights of handicapped children under the EHA during the two-year period when the

---

4. For an extensive discussion of the administrative or procedural protections established by the IDEA for the education of disabled children, *see,*

*e.g., Light*, 41 F.3d at 1227; *Dell*, 32 F.3d at 1055.

*Smith* decision precluded the award of attorney's fees under the EHA."), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988); *Fontenot v. Louisiana Bd. of Elementary and Secondary Educ.,* 805 F.2d 1222, 1223 (5th Cir.1986) (describing congressional response to the *Smith* decision by passing § 1415(e)(4) as acting "swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent.").

The legislative history reveals Congress's reasons for adding the fee-claim provisions to the IDEA. Senator Weicker, chairman of the Senate Conference Committee on the HCPA, which incorporated the provision into the act, then known as the EHA, said

> What we do here today is to make the Education of Handicapped Act consistent with more than 130 other fee shifting statutes which provide for the award of attorney's fees to parties who prevail in court to obtain what is guaranteed to them by law. *Without this remedy, many of our civil rights would be hollow pronouncements available only to those who could afford to sue for enforcement of their rights."*

132 Cong.Rec.S. 9277 (July 17, 1986) (remarks of Sen. Weicker) (emphasis added).

In a 1991 decision discussing the IDEA's provision for an award of attorney fees in 20 U.S.C. § 1415(e)(4), the Eighth Circuit Court of Appeals observed that

> Many circuits have held, and we agree, that this statute permits a parent to recover attorneys' fees after prevailing at the state administrative level by filing a separate suit in federal court solely for the that purpose. *See Moore v. District of Columbia,* 907 F.2d 165, 166 (D.C.Cir.) (en banc),

*cert. denied,* [498] U.S. [998], 111 S.Ct. 556, 112 L.Ed.2d 563 (1990), and cases cited. *Johnson,* 949 F.2d at 1003; *see also Dell,* 32 F.3d at 1063 (a parent may bring an independent suit in federal district court under 20 U.S.C. § 1415(e)(2) for attorney fees, and "the great weight of judicial authority has held that a litigant can recover in the district court for attorneys' fees both in that court and in the earlier administrative proceedings."); *McCartney C. v. Herrin Community Unit Sch. Dist. No. 4,* 21 F.3d 173, 174 (7th Cir.1994) (a parent "may bring an independent suit in federal district court under 20 U.S.C. § 1415(e)(2) to obtain, pursuant to § 1415(e)(4)(B), reimbursement of the attorneys' fees expended in obtaining that relief."); *Brown v. Griggsville Community Unit Sch. Dist. No. 4,* 12 F.3d 681, 683–84 (7th Cir.1993) (recognizing that although the language of the statute is ambiguous, the great weight of judicial authority had held that a litigant can recover in the district court for attorney fees incurred in actions in the courts and in the earlier state administrative proceedings). The legislative history supports the conclusion that Congress intended "prevailing parties" at administrative levels to obtain attorneys fees as well as parties who prevailed in judicial proceedings. *See* 131 Cong.Rec. H9, 966 (daily ed. Nov. 12, 1985) (remarks of Rep. Williams) (including prevailing in administrative proceedings as entitling a plaintiff to attorney fees).[5]

The *Johnson* court's analysis of the attorneys fees provision continued by noting that "[t]he initial question is ... whether [the plaintiff] was a 'prevailing party,' that is, did [the plaintiff] 'succeed on "any significant issue ... which achieve[d] some of the benefit [the plaintiff] sought' " in filing [the plain-

---

5. Representative Williams, the floor manager of the House version of the HCPA, stated that one purpose of the attorneys fees provision was that "a parent or guardian of a handicapped child who prevails against a school district or state education agency in a Federal or State court, or an administrative proceeding such as a due process hearing or a State appeal, may be awarded reasonable attorneys' fees, costs, and expenses by the court." *Id.* Similarly, Representative Bartlett indicated that the uniqueness of awarding attorneys fees incurred in administrative hearings was not lost upon Congress when he said,

"For the first time, we have authorized awarding of fees at the due process hearing system level in disputes which do not go on to court on a substantive issue." 132 Cong.Rec. H4842 (daily ed. July 24, 1986) (remarks of Rep. Bartlett). The Senate, too, recognized that it was authorizing an award of attorney fees incurred at the administrative level in the Senate committee's report on the bill: "The committee intends that S. 415 will allow the Court, ... to award fees for time spent by counsel in mandatory EHA administrative proceedings." S.Rep. No. 112, 99th Cong., 2nd Sess. 14 (1985), U.S.Code Cong. & Admin.News 1986, pp. 1798, 1804.

tiff's] due process complaint?" *Johnson,* 949 F.2d at 1003 (citing *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989), which in turn quotes *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)).[6] The issue of whether or not the plaintiffs here were "prevailing parties" within the meaning of § 1415(e)(4)(B), however, is not presently before the court on the defendants' motions for summary judgment based on expiration of the applicable statute of limitations. The court therefore need not give any consideration at this time to the question of the degree to which any of the plaintiffs here were "prevailing parties" in the administrative proceedings for which they seek attorneys fees.[7]

### 1. Fee claims versus judicial review

 What is of significance to the present litigation is that the question posed

to the court in a fee-claim action is different from that posed in a judicial review of the substantive claim under the IDEA. In a fee-claim action, in deciding whether a party is entitled to attorneys fees, the Supreme Court has said that "the result is what matters." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. Thus, the degree of success determines the extent to which the claimant may recover attorney fees. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939 (part of test is whether the party " 'achieves some of the benefit the part[y] sought in bringing suit,' " quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978); *Johnson,* 949 F.2d at 1003 (noting that " 'purely technical or de minimis' victory," precludes award of attorneys fees, while " 'limited success' " may "justif[y] a significant reduction in an attorneys' fee award."). In fact, the Supreme Court stated that the "results obtained" are "crucial" to the determination of the extent to which a

---

6. It was Congress's intent that "prevailing party" under the IDEA be interpreted in a manner "consistent with the United States Supreme Court's decision in *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983)." S.Rep.No. 112, 99th Cong., 2d Sess. 13–14, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1798, 1803. *Hensley* states that a party is a "prevailing party" when he or she " 'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.' " *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). Similarly, in *Johnson,* the Eighth Circuit Court of Appeals, citing identical standards for prevailing parties, distinguished in an IDEA case between sufficient success and only obtaining relief that "comes perilously close to being no more than a 'purely technical or de minimis' victory," or "the kind of 'limited success' that justifies a significant reduction in an attorneys' fee award." *Johnson,* 949 F.2d at 1003 (citing both *Hensley* and *Texas Teachers,* 489 U.S. at 792, 109 S.Ct. at 1493–94, for the standards for "prevailing party").

7. The court in *Johnson* also pointed out that, in addition to degree of relief obtained, there are other limitations placed on a plaintiff's right to recover attorney fees and costs by subsection (F) of 20 U.S.C. § 1415(e)(4), which provides that [w]henever the court finds that ... the parent or guardian, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy ... the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this subsection.

*Johnson,* 949 F.2d at 1003. Although the issue of whether the plaintiff had unreasonably protracted the litigation or administrative process was of critical importance in *Johnson,* 949 F.2d at 1003–1004, again, this is not an issue before this court, at least not at this time. The statute of limitations question with which this court is principally occupied did not arise in *Johnson,* because, after the parties entered into a consent agreement, the plaintiff made a demand for attorneys fees, and, when that demand was refused, filed the action for the sole purpose of recovering attorneys fees for the state administrative proceedings. *Johnson,* 949 F.2d at 1002. In *Johnson,* there does not appear to have been any significant lag between the entry of the consent agreement and the demand for fees, or between refusal of that demand and the filing of the fee-claim action.

In this case, however, over eighteen months, and in some cases nearly two years, passed between disposition of the administrative proceedings and the filing of the fee-claim action. When pressed at the oral arguments on the motions for summary judgment in these matters to explain the reason for the delay, counsel for plaintiffs said that he found no statute of limitations for a fee claim action in the IDEA itself, and was not aware that an argument could be made for a statute of limitations as short as thirty days. More persuasively, perhaps, counsel for plaintiffs stated that there had been some abortive attempts to settle the fee claims by negotiations, although the parties dispute whose failure to respond to what led to the failure of those negotiations.

party is a "prevailing party" and hence crucial to the amount of fees that party is entitle to recover. *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney fees under 42 U.S.C. § 1988.").[8] However, the Supreme Court has also cautioned that an action for attorney fees "should not result in a second major litigation" revisiting the merits of the underlying action. *Commissioner, Immigration and Naturalization Service v. Jean,* 496 U.S. 154, 163, 110 S.Ct. 2316, 2321, 110 L.Ed.2d 134 (1990) (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941);[9] *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 766, 109 S.Ct. 2732, 2739, 105 L.Ed.2d 639 (1989) (quoting *Hensley* ); *Pierce v. Underwood,* 487 U.S. 552, 563, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988) (quoting *Hensley* ); *Blum v. Stenson,* 465 U.S. 886, 901 n. 19, 104 S.Ct. 1541, 1550 n. 19, 79 L.Ed.2d 891 (1984) (quoting *Hensley* ). By contrast, review of the administrative proceedings under the IDEA considers, first, whether the state has complied with the procedures of the Act, and, second, whether the IEP developed by the educational authorities will attain the goals of the Act in the case of a particular child. *Hendrick Hudson Dist. Bd. of Educ.,* 458 U.S. at 206–207, 102 S.Ct. at 3051.[10] Thus, judicial review of administrative proceedings under the IDEA, although heavily concerned with procedural proprieties, is also intended to be a revisiting of the merits of the underlying litigation.

Also of more significance are other distinctions courts have made between an action to recover attorneys fees and an action for review of the disposition of the underlying,

substantive claim. In an action to recover attorney fees under provisions of the Equal Administration of Justice Act, 28 U.S.C. § 2412(d)(1)(B), in which the claimant tried to tie the timeliness of his fee claim to the disposition of his substantive appeal rather than to the disposition of his fee claim, the Eighth Circuit Court of Appeals observed that

> "a claim for attorney's fees should be treated as a matter collateral to and independent of the merits of the litigation." [*Obin v. District No. 9 of the Int'l Ass'n of Machinists and Aerospace Workers,* 651 F.2d 574, 583 (8th Cir.1981) ]. The Supreme Court expressly approved of this characterization in *White v. New Hampshire Department of Employment,* 455 U.S. 445, 451, 102 S.Ct. 1162, 1168, 71 L.Ed.2d 325 (1982). We find no rational basis for determining that a claim for attorneys' fees is collateral to and independent of the merits for some purposes but not for others.

*United States v. Estridge,* 797 F.2d 1454, 1459 (8th Cir.1986). The court therefore dismissed the appeal of the denial of attorney fees as untimely. *Id.* In *White,* the Supreme Court "held that a request for attorney's fees is not inherently or necessarily subsumed by a decision on the merits, and that the issue is uniquely separable from the cause of action to be proved at trial." *Young v. Powell,* 729 F.2d 563, 566 (8th Cir.1984) (citing *White,* 455 U.S. at 451, 102 S.Ct. at 1166).

**2. Fee claims versus judicial review under the IDEA**

■ The IDEA itself makes it clear that under its provisions an action for attorneys

---

**8.** The Supreme Court elaborated further on this theme in *Hensley:*

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943.

**9.** The Court in *Jean* observed that requiring revisiting the merits of the underlying litigation at each stage attorneys fees are requested "can spawn a 'Kafkaesque judicial nightmare' of infinite litigation to recover fees for the last round of litigation over fees." *Jean,* 496 U.S. at 163, 110 S.Ct. at 2321 (citing *Cinciarelli v. Reagan,* 234 U.S.App.D.C. 315, 324, 729 F.2d 801, 810 (1984)).

**10.** For a further statement of the standards applicable to a judicial review of an administrative decision under the IDEA, see *supra,* n. 3.

fees and an action for judicial review of the administrative decision are entirely separate. The IDEA provides for judicial review of administrative proceedings as follows:

> Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section [which provides for an appeal to the state educational agency of a hearing and decision of a local educational agency or an intermediate educational unit], shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2). Thus, the person who may seek judicial review under this provision is "any party aggrieved by the findings or decision made" in the administrative proceedings. *Id.* Jurisdiction for judicial review lies "in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." *Id.*

■ The action for attorneys fees, however, is authorized in another subsection of the IDEA, this time 20 U.S.C. § 1415(e)(4). That provision of the IDEA provides, in pertinent part, as follows:

> (4)(A) The district courts of the United States shall have jurisdiction of actions brought under this subsection without regard to the amount in controversy.
>
> (B) In any action or proceeding under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

20 U.S.C. § 1415(e)(4)(A) & (B). Thus, section 1415(e)(4)(B) provides for a cause of action for attorney fees, not by "any aggrieved party," but by a "prevailing party."

Jurisdiction over the action for attorneys fees lies not in either State or federal court, but, pursuant to § 1415(e)(4)(A), in the "district courts of the United States" and such jurisdiction is "without regard to the amount in controversy." 20 U.S.C. § 1415(e)(4)(A) & (B). Therefore, both the parties authorized to pursue the two kinds of actions, judicial review and an action for fees, and the court or courts authorized to hear them are different.

■ As a further matter, the grounds upon which relief may be granted and the nature of the proceedings, or scope of review, differ between the two kinds of actions. In judicial review actions, the court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). Some courts have described the review under 20 U.S.C. § 1415(e)(2), as a modified trial de novo. *Massachusetts Dep't of Ed. v. David D.,* 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986); *see also James v. Nashua Sch. Dist.,* 720 F.Supp. 1053, 1058 (D.N.H.1989) (finding "suit under section 1415(e)(2) is similar to a normal civil action in which all of the issues of the case are tried de novo"). However, the character of the inquiry should not be overstated and does not change the action from one of judicial *review.* See, e.g., *Hendrick Hudson Dist. Bd. of Educ.,* 458 U.S. at 206, 102 S.Ct. at 3051 (reviewing courts may not "substitute their own notions of sound educational policy for those of the school authorities which they review."); *Spiegler v. District of Columbia,* 866 F.2d 461, 465 (D.C.Cir.1989) (in deciding whether a § 1415(e)(2) action was more analogous to either an administrative appeal or to a de novo civil action, the court stated that "[w]e find that actions brought under section 1415(e)(2) of the [IDEA] are more analogous to appeals from administrative agencies than to causes of action 'for which a limitation [period] is not otherwise specially prescribed' " at least in part because the hearing officer's determinations are still afforded substantial deference). A fee-claim action

under the IDEA is conducted on an entirely different basis from a judicial review of a prior decision. The court makes a determination, in its own discretion, of an entirely different set of factual and legal questions from those in a judicial review action, considering whether and to what extent the claimant is a "prevailing party." 20 U.S.C. § 1415(e)(4)(B); *see, e.g., Hensley,* 461 U.S. at 433–35, 103 S.Ct. at 1939–40. There is no suggestion of deference to any prior decision in a fee-claim action.

Most courts to consider the question, although not applying the statutory analysis above, have nonetheless concluded that an action for attorney fees is separate and different in kind from an action appealing the underlying administrative decision. *See, e.g., Murphy v. Timberlane Regional Sch. Dist.,* 22 F.3d 1186, 1193 n. 9 (1st Cir.) (IDEA case distinguishing the substantive claim before it from an action based on a "derivative fee-shifting provision"), *cert. denied,* —— U.S. ——, 115 S.Ct. 484, 130 L.Ed.2d 396 (1994); *Johnson,* 949 F.2d at 1003 (prevailing party under IDEA may recover fees "by filing a separate suit in federal court solely for that purpose," citing *Moore,* 907 F.2d at 166); *Robert D. v. Sobel,* 688 F.Supp. 861, 864 (S.D.N.Y.1988) ("There is no similarity or analogy between an action for attorney's fees and costs, and an action to appeal a final administrative determination," and finding that an action under § 1415(e)(2) is an administrative appeal, while § 1415(e)(4)(B) provides for a separate attorney fee claim action); *Michael M. v. Board of Ed. of New York City Sch. Dist.,* 686 F.Supp. 995 (E.D.N.Y.1988) ("There is no persuasive reason ... to characterize for statute of limitations purposes actions brought under the [IDEA] for attorney's fees in the same way as [IDEA] actions have been characterized [that seek to enforce educational rights]."); *Bow Sch. Dist. v. Quentin W.,* 750 F.Supp. 546 (D.N.H.1990) (difference between judicial review action under § 1415(e)(2) and fee-claim action under § 1415(e)(4)(B) is "obvious" in that "[n]o aspect of a § 1415(e)(4)(B) action is appellate in nature.").

■ However, the Seventh Circuit Court of Appeals, the only circuit court of appeals to consider directly the question of what statute of limitations applies to fee-claim actions under the IDEA, has consistently blurred the distinction between the two kinds of actions. In *Brown v. Griggsville Community Unit Sch. Dist. No. 4,* 12 F.3d 681, 683 (7th Cir.1993), that court first held that a parent who obtains relief under the IDEA may bring an independent suit in federal district court to obtain attorney fees authorized by 20 U.S.C. § 1415(e)(4)(B). Subsequently, the Seventh Circuit Court of Appeals characterized *Brown* as holding "that a parent who without having to file a suit obtains relief under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.,* may bring an independent suit in federal district court *under 20 U.S.C. § 1415(e)(2)* to obtain, pursuant to § 1415(e)(4)(B), reimbursement of the attorney's fees expended in obtaining relief nonjudicially." *McCartney C. v. Herrin Community Sch. Dist. No. 4,* 21 F.3d 173, 174 (7th Cir.1994) (emphasis added). Yet, the decision in *Brown* makes no reference whatsoever to 20 U.S.C. § 1415(e)(2) as the authority for an action to recover attorneys fees as provided under § 1415(e)(4)(B). Nonetheless, the misstatement of the holding in *Brown* has become dogma in the Seventh Circuit. Thus, in *Dell,* the court quoted *McCartney C.*'s misstatement of the holding in *Brown. Dell,* 32 F.3d at 1063. In the most recent fee-claim case under the IDEA in that circuit, the court described the plaintiff as having "filed an independent suit under 20 U.S.C. § 1415(e)(2) against [the local board of education] seeking recovery pursuant to 20 U.S.C. § 1415(e)(4)(B) for attorney's fees arising out of services rendered by [counsel in administrative proceedings]." *Rosemary B. v. Board of Educ. of Community High Sch. Dist. No. 155,* 52 F.3d 156, 158 (7th Cir.1995); *see also James,* 720 F.Supp. at 1057–58 (considering an action for attorney fees under § 1415(e)(4)(B) of the IDEA as being brought pursuant to § 1415(e)(2)). This view of a fee-claim action under the IDEA perceives it as a species of judicial review, a conception of the claim with which this court must respectfully disagree. An action for attorney fees under the IDEA is not brought as a judicial review action over

which either state or federal courts have jurisdiction pursuant to § 1415(e)(2), but as an independent action over which the *federal* courts have exclusive jurisdiction pursuant to § 1415(e)(4)(A) & (B). 20 U.S.C. § 1415(e)(4)(A) & (B). The court must now turn to consideration of the District's and the Agency's assertion that the plaintiffs' actions for attorneys fees are barred by the applicable statute of limitations.

### D. The Statute Of Limitations For IDEA Attorneys Fees Actions

The IDEA does not establish a statute of limitations for an action for judicial review or for attorneys fees. *Dell,* 32 F.3d at 1055–56. Worse yet for the certainty of litigants and the peace of mind of the courts, there is no uniformity among the decisions of courts as to what statute of limitations should be applicable to a fee-claim action under the IDEA. The court will survey the small group of cases that have addressed the question in some detail. However, the court must first consider the course it must take when a federal statute is silent as to the applicable statute of limitations.

### 1. The method for selecting the proper statute of limitations

■ As this court noted at the beginning of this opinion, the Supreme Court has said that " '[f]ew areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations.' " *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 1941, 85 L.Ed.2d 254 (1985) (quoting *Chardon v. Fumero Soto,* 462 U.S. 650, 667, 103 S.Ct. 2611, 2622, 77 L.Ed.2d 74 (1983) (Rehnquist, J., dissenting)). Experience teaches that strict adherence to time limitations "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). Time limitations "are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 452–53 (7th Cir. 1990) (discussing the time limitations in 42

U.S.C. § 2000e–5(f)(1)). Thus, time requirements "for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984).

■ Notwithstanding the importance of defined time limitations to the evenhanded administration of justice, Congress with some frequency fails to provide a statute of limitations in federal legislation. *See Board of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980). When "Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson,* 471 U.S. at 266–67, 105 S.Ct. at 1942 (footnote omitted); *see also Tomanio,* 446 U.S. at 484, 100 S.Ct. at 1795 (court must borrow "the state law of limitations governing an analogous cause of action"); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (when there is such a void in federal law, court must "borrow" statute of limitations from analogous state law); *O'Sullivan v. Felix,* 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914) (same). This process of borrowing is necessarily a substitute for the legislative process, and therefore "not a methodology that fits comfortably with the exercise of judicial authority," *Dell,* 32 F.3d at 1058, and has been described as one that is "at best uncertain and at worst arbitrary." *McCartney,* 21 F.3d at 174; *see also Dell,* 32 F.3d at 1058 (quoting *McCartney* ).

■ If available state law is less clearly analogous than another federal statute, however, courts may look instead to an analogous *federal* statute of limitations. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294–95, 76 L.Ed.2d 476 (1983). Courts may also look to other federal laws if the state statutes of limitations are "unsatisfactory vehicles" for enforcing federal law. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 355–56, 111 S.Ct. 2773, 2778–79, 115 L.Ed.2d 321 (1991); *DelCostello,* 462 U.S. at

161, 103 S.Ct. at 2289. A state statute of limitations is an "unsatisfactory" choice when it "would frustrate the polices embraced by the federal enactment." *Gilbertson,* 501 U.S. at 355–56, 111 S.Ct. at 2778–79. Application of a statute of limitations drawn from federal law rather than from state law is still the exception rather than the rule, however. *Id.; Reed v. United Transp. Union,* 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989); *Agency Holding Corp. v. Malley–Duff & Assocs.,* 483 U.S. 143, 147, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987).

■ In selecting an analogous state statute from which to "borrow" a statute of limitations, the Supreme Court has established that the court must make a three-part inquiry in which the court must

> consider whether state law or federal law governs the characterization of [the] claim for statute of limitations purposes. If federal law applies, [the court] must next decide whether all [claims pursuant to the statute] should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case. Finally, we must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle.

*Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942–43. The court looks next to the decisions of other courts faced with the question of what statute of limitations is applicable to an IDEA fee-claim action. These decisions, this court finds, apply to a greater or lesser degree the inquiry required by *Wilson* in making their selection of the appropriate statute of limitations.

### 2. *Prior decisions determining the applicable statute of limitations*

Because the body of decisions determining the appropriate statute of limitations for IDEA fee-claim actions is relatively small, the court will consider each such decision in turn. Although the body of cases is small, these decisions select a surprising variety of statutes of limitations in terms of both sources and durations.

The earliest case located by either the parties or the court to address the question at issue here was *Robert D. v. Sobel,* 688 F.Supp. 861 (S.D.N.Y.1988). In *Robert D.,* the court, applying *Wilson,* selected as most appropriate N.Y.C.P.L.R. § 214(2), which "provides that an action must be commenced within three years if it is: 'an action to recover upon a liability, penalty or forfeiture created or imposed by statute.'" *Robert D.,* 688 F.Supp. at 864. The court rejected the judicial review statute of limitations of four months found in N.Y.Educ.Law § 4404(3), previously chosen by the Second Circuit Court of Appeals in *Adler by Adler v. Education Dep't of State of N.Y.,* 760 F.2d 454, 457 (2d Cir.1985), as applicable to actions under § 1415(e)(2). In *Adler,* the Second Circuit Court of Appeals had reasoned that an action under § 1415(e)(2) was essentially an appeal from an administrative proceeding, and the policy of the IDEA, to make an appropriate public education available to disabled children, indicated a short limitation period to avoid delays in terminating inappropriate educational placement. *Adler,* 760 F.2d at 457–59. The court in *Robert D.* found, however, that

> [t]he reasoning of the court in *Adler* ... does not apply to the case at bar. In that case the court was considering review of the Commissioner's determination under Sec. 1415(e)(2), while this case involves solely an award of attorney's fees under Sec. 1415(e)(4)(B). There is no similarity or analogy between an action for attorney's fees and costs, and an action to appeal a final administrative determination. In addition, there is no policy implicated by applying a longer statute of limitations to an action solely to recover attorney's fees. The placement of the handicapped child would not be implicated by an action for attorney's fees incurred in the administrative proceeding under 1415(e)(4)(B) [sic], since the administrative proceeding would have resolved the issue of the child's placement before the action for fees commenced.

*Robert D.,* 688 F.Supp. at 864.

The following month, it was the turn of the United States District Court for the Eastern

District of New York to consider the question in *Michael M. v. Board of Ed. of New York City Sch. Dist.*, 686 F.Supp. 995 (E.D.N.Y.1988). The court, applying the full three-part inquiry established by *Wilson*, found that "[t]he first element in a cause of action for attorney's fees brought under the [IDEA] ..., 20 U.S.C. § 1415(e)(4)(B), is that the claim results from an 'action or proceeding brought under the [IDEA].' This is a matter of federal law." *Michael M.*, 686 F.Supp. at 1001. Next, the court found that "[t]here is no persuasive reason ... to characterize for statute of limitations purposes actions brought under the [IDEA] for attorney's fees in the same way as [IDEA] actions have been characterized [that seek to enforce educational rights]." *Id.* (citing *Robert D.*, 688 F.Supp. at 864). The court therefore also rejected the application of the New York judicial review statute selected in *Adler* as applicable to an action under § 1415(e)(2) to enforce educational rights of disabled children to the attorneys fee claim before it. *Id.* The court went a step further, finding that "[t]he legal and policy arguments that support the holding in *Adler* do not support characterizing a separate action for attorney's fees in the same way for statute of limitations purposes," thus rejecting *Adler*'s assertion that a short, four-month statute of limitations was appropriate to obtain prompt revision of the educational treatment of a disabled child, because "[i]n an action for attorney's fees speed is not of the essence." *Id.* at 1001–2. The court observed that

> The needs and general welfare of the handicapped child would no longer be of concern, since the administrative proceeding would have resolved those issues before the action for fees commenced.

*Id.* at 1002. Finding no analogous action for attorneys fees under New York education law, the court found that the closest applicable general statute of limitations was a three-year statute governing "an action to recover upon a liability ... created or imposed by statute," thereby also selecting N.Y.C.P.L.R. 214(2), because the liability for attorneys fees was imposed by a federal statute without common-law basis. *Id.*

The question was next presented to the United States District Court for the District of New Hampshire in *James v. Nashua Sch. Dist.*, 720 F.Supp. 1053 (D.N.H.1989). In *James*, although the court apparently deemed both a judicial review action and a fee-claim action to be brought pursuant to 20 U.S.C. § 1415(e)(2), *James*, 720 F.Supp. at 1057–58, the court nonetheless concluded that New Hampshire's three-year statute of limitations for personal injuries, N.H.R.S.A. 508:4 I, provided the appropriate statute of limitations. *Id.* at 1058. The court was troubled by the proposed 180–day statute of limitations applicable to complaints to the New Hampshire Human Rights Commission on the ground that the scope of review was not the same, and " '[a] short statute of limitations would tend to negate Congressional intent to encourage fee petitions for proceedings brought prior to adoption of the statute.' " *Id.* at 1057 (quoting *Michael M.*, 686 F.Supp. at 1002). For the same reasons, excessive brevity, the court rejected a one-year statute of limitations for sex discrimination actions. *Id.* at 1058. The court also based its choice of the three-year statute on the ground that an action under § 1415(e)(2) is a "modified trial de novo" dissimilar from a mere judicial review, and a three-year statute of limitations comported with federal policy under the IDEA, which had been amended to provide for attorneys fees awards with specific allowance of such claims by persons precluded for two years by the *Smith* decision from bringing such claims. *Id.* The court also found its selected period consonant, at least in duration, with the decisions in *Michael M.* and *Robert D.*, albeit having chosen a different statute. *Id.* Finally, the court found its choice supported by analogous cases under 42 U.S.C. § 1983, which borrow a personal injury statute. *Id.*

The final district court decision this court will consider in detail is another, more recent decision, from the United States District Court for the District of New Hampshire, *Bow Sch. Dist. v. Quentin W.*, 750 F.Supp. 546 (D.N.H.1990), which, however, did not decide the identical question presented here. *Quentin W.*, was instead a decision selecting a thirty-day statute of limitations from the state's provisions for review of administrative

decisions for a judicial review action under § 1415(e)(2). *Quentin W.,* 750 F.Supp. at 550.[11] The decision is instructive in the distinctions the court drew between the question before it and the question before the court in *James:*

> In *James, supra,* plaintiffs brought an action under § 1415(e)(4)(B), which authorizes courts, in their discretion, to award attorneys' fees to parents or guardians who prevail in an action under the [IDEA]. The court ruled that the state statute of limitations most analogous to such an action was RSA 508:4. However, a suit for attorneys' fees obviously differs from an action under § 1415(e)(2). No aspect of a § 1415(e)(4)(B) action is appellate in nature; rather, it can only be classified as a personal action seeking money damages. Nothing prevents different provisions of a federal statute from being characterized differently for statute of limitations purposes. *See Wilson v. Garcia,* 471 U.S. at 268, 105 S.Ct. at 1942. Therefore, the Court finds the reasoning of *James* inapplicable to the instant action.

*Quentin W.,* 750 F.Supp. at 549–550. Thus, the court, following its own application of *Wilson* to the question before it, chose a different statute of limitations as applicable to a judicial review action under § 1415(e)(2) from that previously chosen for a fee claim action under § 1415(e)(4)(B). *Id.* at 550.

A few unpublished district court decisions widen the field of candidates for the appropriate statute of limitations for fee-claim actions under the IDEA. *See Reed v. Mokena Sch. Dist. No. 159,* 1994 WL 163989 (N.D.Ill. filed April 29, 1994) (in a decision rendered after *McCartney,* but before *Dell,* and cited favorably in the latter, the court rejected the limitation for fee claims found in the local rules of the court, choosing instead the same 120–day statute of limitations as applicable to both fee-claim actions and judicial review actions); *Christine C. v. Seneca Grade Sch. Dist. No. 170,* 1992 WL 220627 (N.D.Ill. filed Sept. 4, 1992) (adopting local rule's 90–day limitation on applications for attorneys fees for attorney fee-claim cases under IDEA), *decision on motion for reinstatement,* 1993 WL 294021 (N.D.Ill. filed August 5, 1993) (denying reinstatement of case on basis that *Panico,* discussed below, which stated that a fee claim action and an administrative appeal "should be treated differently for statute of limitations purposes," did not decide the applicable statute of limitations, nor create an inconsistency with the prior decision in this case, and plaintiff's motion did not meet standards of *Fed.R.Civ.P.* 60(b)); *Panico v. Board of Ed. of Evergreen Park Community Sch. Dist. 231,* 1992 WL 211051 (N.D.Ill. filed August 26, 1992) (refusing to apply 120–day statute of limitations borrowed from state statute for appeal of administrative decisions as "too short," but not deciding on the proper statute of limitations on the ground that the parties had not adequately briefed the issue).

As the relative frequency with which federal district courts in Illinois have considered the question might suggest, the Seventh Circuit Court of Appeals is the only federal appellate court to determine the statute of limitations for IDEA attorneys fees claims.[12] The Seventh Circuit Court of Appeals has thrice applied the same statute of limitations

---

11. In *Dell,* 32 F.3d at 1062 n. 23, the Seventh Circuit Court of Appeals incorrectly identified the decision in *Quentin W.* as borrowing a 30–day statute of limitations for an attorney fee-claim action under the IDEA.

12. In *Dell,* 32 F.3d at 1062 n. 23, the Seventh Circuit Court of Appeals identified a number of appellate decisions to consider related question concerning attorney fees under the IDEA. Those decisions are the following: *McCartney C.,* 21 F.3d at 173 (holding that statute of limitations begins to run when administrative decision is final); *W.G. v. Senatore,* 18 F.3d 60 (2d Cir.1994) (lacking subject matter jurisdiction to consider merits of post-settlement motion for fees); *Borengasser v. Arkansas State Bd. of Educ.,* 996 F.2d 196 (8th Cir.1993) (stating fees should be awarded to "prevailing party" unless the award would be unjust); *Hacienda La Puente Unified Sch. Dist. v. Honig,* 976 F.2d 487 (9th Cir.1992) (holding that plaintiffs who won in administrative proceedings were "prevailing party"); *Heldman v. Sobol,* 962 F.2d 148 (2d Cir.1992) (permitting challenge to state procedural method for selecting hearing officers to proceed without exhausting administrative remedies); and *Tonya K. v. Board of Educ.,* 847 F.2d 1243 (7th Cir.1988) (holding that attorneys' fees are costs, not damages, and that withdrawn motion for attorneys' fees was a pending action that could be reinstated).

to fee claim actions as it has to appeals of administrative proceedings, and always in cases in which Illinois law provided the appropriate body of state law from which to select the limitations period. In the first such decision, the Seventh Circuit Court of Appeals perceived an overlap between an action for fees and a judicial review making it appropriate, the court found, to apply the same statute of limitations to both claims. *Dell*, 32 F.3d at 1063. The court observed that

[i]n awarding attorneys' fees, the district court must review not only proceedings in its own court but also proceedings in a state administrative environment with which it may not be very familiar. A return to this quagmire months after adjudication of the merits would result in a needless expenditure of judicial energy. Although the promptness of the decision may not be as important here as in other IDEA situations, both the school district and the parents still have an interest—along with the attorney—in the expeditious resolution of this matter. Moreover, by the end of the administrative proceedings and any subsequent judicial review, the parties ought to have a good idea of the extent and quality of representation, and long-term deferral of the issue simply serves no salutary purpose. These considerations suggest that there is considerable wisdom in the approach suggested by Judge Kocoras, one of our colleagues on the district bench of the Northern District of Illinois, that it was preferable to "apply a statute of limitations which finds some relevance to the administration of the IDEA itself." *Reed v. Mokena School District No. 159*, No. 94 C 476, 1994 WL 163989, at *3 (N.D.Ill. Apr. 29, 1994) (unpublished opinion). Accordingly, we believe that the most prudent course is to utilize the 120-day limitation found in the Illinois School Code as the governing statute of limitations. We believe that the use of this limitations period ... best promotes the purposes of the IDEA.

*Dell*, 32 F.3d at 1064–63. The Seventh Circuit Court of Appeals has followed its determination in *Dell*, without further comment or analysis, on two other occasions. *See Rosemary B. v. Board of Educ. of Community High Sch. Dist. No. 155*, 52 F.3d 156, 158 (7th Cir.1995) (finding *Dell* foreclosed further discussion of the applicable statute of limitations, and deciding instead whether plaintiff's suit was filed within 120 days of its accrual, and holding that it was not); *Reed v. Mokena Sch. Dist. No. 159*, 41 F.3d 1153, 1154 (7th Cir.1994) (the contention of the appellant that the 120-day statute of limitations was improper was "foreclosed by our decision in *Dell v. Board of Education*, 32 F.3d 1053 (7th Cir.1994)."). However, because this court finds the reasoning of the Seventh Circuit Court of Appeals flawed and its analytical criteria inappropriate, the court, in the absence of a determination from our own Circuit Court of Appeals, will proceed to an independent analysis of the question of what statute of limitations properly applies to an action for attorney fees under the IDEA.[13]

### 3. The proper statute of limitations here

#### a. The parties' proffers

The District and the Agency assert that the proper statute of limitations for a fee-claim action under the IDEA must be "borrowed" from Iowa's Administrative Procedures Act, Iowa Code Ch. 17. Specifically, they offer Iowa Code § 17A.19(3), which provides that

If a party files an application under section 17A.16, subsection 2, for rehearing with the agency, the petition for judicial review must be filed within thirty days after that application has been denied or deemed denied. If a party does not file an application under section 17A.16, subsection 2, for rehearing, the petition must be filed within thirty days after the issuance of the agency's final decision in that contested case. If an application for rehearing is granted, the petition for review must be filed within thirty days after the issuance of the agency's final decision on rehearing. In cases

13. The court would perforce have to make some independent analysis, even were it to accept the Seventh Circuit Court's position, in order to determine which *Iowa* statute of limitations was applicable.

involving a petition for judicial review of agency action other than the decision in a contested case, the petition may be filed at any time petitioner is aggrieved or adversely affected by that action.

Iowa Code § 17A.19(3). The section of the administrative procedures act to which defendants point provides for petitions for judicial review by "a person or party who is aggrieved or adversely affected by agency action." Iowa Code § 17A.19. The nature of the review is defined in Iowa Code § 17A.19(7) & (8):

> 7. In proceedings for judicial review of agency action a court may hear and consider such evidence as it deems appropriate. . . .
>
> 8. The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:
>
> a. In violation of constitutional or statutory provisions;
>
> b. In excess of the statutory authority of the agency;
>
> c. In violation of an agency rule;
>
> d. Made upon unlawful procedure;
>
> e. Affected by other error of law;
>
> f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole; or
>
> g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

Iowa Code § 17A.19(7) & (8). Defendants assert that the statute of limitations and nature of the review are in keeping with the IDEA policy of prompt disposition of contested matters under the IDEA and will prevent allocation of resources to fee disputes that might better be directed to providing adequate educational placement and programs for disabled children. When pressed by the court to identify the proper statute of limitations if the court held the 30–day limitations period was inappropriate, counsel for defendants conceded that the proper statute of limitations was Iowa's two-year statute of limitations for "injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty," found in Iowa Code § 614.1(2). Counsel recognized that if this limitations period was applicable, plaintiffs' actions were timely filed.[14]

Plaintiffs counter that the thirty-day statute of limitations proposed by the defendants is too short to allow for any meaningful negotiation of a fee dispute and is unnecessary to serve the purposes of the IDEA to provide appropriate educational placement and services to disabled children, because the administrative proceedings have already seen to that concern. Plaintiffs argue that hastily cutting off a right to sue for attorney fees will impede the ability of disabled children to obtain competent representation to vindicate their rights under the IDEA. Plaintiffs have therefore nominated as the appropriate statute of limitations Iowa Code § 614.1(4), which provides, in pertinent part, that the statute of limitations for "all other actions" for which no statute of limitations is prescribed shall be "five years." Iowa Code § 614.1(4).

#### b. Application of the Wilson analysis

 Turning to its own application of the *Wilson* criteria, the court finds first that a fee claim action under the IDEA is not only a matter in which federal law governs the characterization of the claim for statute of limitations purposes, *Wilson*, 471 U.S. at 268, 105 S.Ct. at 1942–43, but is an action brought exclusively pursuant to federal law in federal court. 20 U.S.C. § 1415(e)(4)(A) & (B); *see also Micahel M.*, 686 F.Supp. at 1001 (fee-claim under IDEA is "a matter of federal

---

**14.** The court finds counsel's concession both candid and appropriate in light of precedent defendants have cited, which, although defendants seek to dismiss in favor of the conclusion reached in *Dell*, 32 F.3d at 1063, recognized the application of personal injury statutes of limitations to attorney fee-claim actions under the IDEA.

law"). Federal law dictates the meaning of "prevailing party," which is the "crucial" inquiry in a party's claim for attorneys fees. *Texas State Teachers Ass'n,* 489 U.S. at 791–92, 109 S.Ct. at 1493–94; *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943; *Johnson,* 949 F.2d at 1003. The legislative history of the IDEA makes clear that these federal standards were to be applied to attorney fee claims under the IDEA. *See* S.Rep. No. 112, 99th Cong., 2d Sess. 13–14, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1798, 1803 ("prevailing party" under the IDEA be interpreted in a manner "consistent with the United States Supreme Court's decision in *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983).").

▮▮▮▮▮ Although judicial review under the IDEA pursuant to § 1415(e)(2) is also a creature of federal law, turning to the second inquiry under *Wilson,* it is plain to this court that actions under § 1415(e)(2) and § 1415(e)(4)(B) should not be characterized in the same way, but must be evaluated differently depending upon the varying factual circumstances and legal theories presented in each kind of case. *Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942–43. The court has been at some pains in this opinion, beginning at page 1208, to identify the differences in the nature of the factual and legal inquires underlying actions under § 1415(e)(4)(A) and (B) as compared to § 1415(e)(2). The court agrees with the court in *Robert D.* that "[t]here is no similarity or analogy between an action for attorney's fees and costs, and an action to appeal a final administrative determination" such that the same statute of limitations should apply to both kinds of actions. *Robert D.,* 688 F.Supp. at 864; *Michael M.,* 686 F.Supp. at 1001 (there is "no persuasive reason ... to characterize" the two kinds of claims "in the same way"). There is simply "[n]o aspect of a § 1415(e)(4)(B) action [that] is appellate in nature," or even that smacks of judicial review as those standards are stated in § 1415(e)(2), in light of the Supreme Court's statement of the two-fold nature of the court's inquiry in an action pursuant to

§ 1415(e)(2). *See Hendrick Hudson Dist. Bd. of Educ.,* 458 U.S. at 206–07, 102 S.Ct. at 3051. Although Iowa Code § 17A.19(3) might well be the appropriate statute of limitations for a judicial review action pursuant to § 1415(e)(2) in Iowa courts in light of the similarity of the review under both statutes,[15] a matter upon which this court is not required to pass, it is assuredly not the proper statute of limitations for the completely different kind of action contemplated in § 1415(e)(4)(B).

▮▮▮ The court may turn at last to the third inquiry under *Wilson,* which is what statute provides the most appropriate limiting principle when the essence of the claim in question is properly characterized. *Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942–43. It is well to remember at this stage of the inquiry that a state statute of limitations can be "borrowed" only "if it is not inconsistent with federal law or policy to do so." *Id.* at 266–67, 105 S.Ct. at 1941–42. The court concludes that the very short statute of limitations advocated by defendants in this case would be inconsistent, if not totally contrary, to the federal policy of vindicating the rights of disabled children under the IDEA and the vindication of federal rights generally.

Federal law, policy, experience, and common sense, make plain that, practically speaking, in today's complex society, attorneys are the key to obtaining relief from violations of individual and group rights in many contexts. The United States Supreme Court has recognized that "[l]awyers ... 'are necessities, not luxuries.' Their presence is essential because they are the means through which the other rights of the person on trial are secured." *Michigan v. Harvey,* 494 U.S. 344, 357, 110 S.Ct. 1176, 1184, 108 L.Ed.2d 293 (1990) (citing *United States v. Cronic,* 466 U.S. 648, 653–54, 104 S.Ct. 2039, 2043–44, 80 L.Ed.2d 657 (1984)); *Penson v. Ohio,* 488 U.S. 75, 84, 109 S.Ct. 346, 352, 102 L.Ed.2d 300 (1988); *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). Furthermore, the na-

**15.** Both Iowa Code § 17A.19 and § 1415(e)(2) of the IDEA provide for review of matters upon petition of an "aggrieved party" and both require review of substantive matters as well as the propriety of the procedures leading to the administrative decisions.

ture of the judicial system of this country, civil and criminal, itself makes consultation, and often employment, of legal representatives essential:

> [t]he paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth—as well as fairness—is " 'best discovered by powerful statements on both sides of the question.' "

*Penson*, 488 U.S. at 84, 109 S.Ct. at 352; *Cronic*, 466 U.S. at 655, 104 S.Ct. at 2044–45. The importance of consultation and employment of legal counsel to vindicate civil rights has also been recognized by federal statutory provisions awarding attorney fees for parties who succeed in vindicating those rights at trial:

> Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit " 'does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance.' " House Report, at 2 (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 [88 S.Ct. 964, 966, 19 L.Ed.2d 1263] (1968)). "If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." 122 Cong.Rec. 33313 (1976) (remarks of Sen. Tunney).

*City of Riverside v. Rivera*, 477 U.S. 561, 575, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986). Like many other federal civil rights statutes, the IDEA provides for fee shifting in favor of a plaintiff who is a "prevailing party" in either judicial or administrative proceedings to vindicate a disabled child's right to proper educational treatment. 20 U.S.C. § 1415(e)(4)(B). These fee-shifting statutes legislate a simple truth: In today's complex legal system, lawyers play a critical role in vindicating important public and private rights.

 Congress recognized this simple truth by moving so swiftly to provide a cause of action for attorneys fees after the Supreme Court held in *Smith*, 468 U.S. 992, 104

S.Ct. 3457, 82 L.Ed.2d 746, that attorneys fees were not available to a prevailing party under the IDEA. Congress sought to rectify the omission of a fee-claims provision in the IDEA in part to encourage, assist, and make whole "those plaintiffs and attorneys who worked to vindicate the rights of handicapped children under the EHA during the two-year period when the *Smith* decision precluded the award of attorney's fees under the EHA." *Counsel*, 849 F.2d at 739. Sponsors of the fee-claim provision made clear that, "[w]ithout this remedy, many of our civil rights would be hollow pronouncements available only to those who could afford to sue for enforcement of their rights," and that vindication of rights under the IDEA should not be so hampered. 132 Cong.Rec.S. 9277 (July 17, 1986) (remarks of Sen. Weicker).

This strong federal policy for fostering vindication of federal rights by providing for counsel who can most effectively prosecute those rights is not offset by any policy of the IDEA for prompt review and remedy of a disabled child's educational placement. As this court and others have recognized, by the time a fee claim is at issue, the administrative proceedings, or subsequent judicial review of those proceedings, will have expeditiously seen to vindication of the rights of a child to prompt and correct educational placement under the IDEA. *James*, 720 F.Supp. at 1058; *Michael M.*, 686 F.Supp. at 1001; *Robert D.*, 688 F.Supp. at 864. On the question of what limitations period should be applicable to a civil rights action pursuant to 42 U.S.C. § 1983, the Supreme Court has observed that "in actions brought in federal courts, we have disapproved the adoption of state statutes of limitations that provide only a truncated period of time within which to file suit, because such statutes inadequately accommodate the complexities of federal civil rights litigation and are thus inconsistent with Congress' compensatory aims." *Felder v. Casey*, 487 U.S. 131, 139–40, 108 S.Ct. 2302, 2307–08, 101 L.Ed.2d 123 (1988) (citing *Burnett v. Grattan*, 468 U.S. 42, 50–55, 104 S.Ct. 2924, 2930–32, 82 L.Ed.2d 36 (1984)).

As a further matter, the 30–day statute of limitations suggested by defendants provides no realistic opportunity for the negotiation

and compromise of fee claims prior to the filing of an independent action for fees in federal court pursuant to § 1415(e)(4)(A) & (B). Recognizing that "[t]o the old adage that death and taxes share a certain inevitable character, federal judges may be excused for adding attorneys' fees cases," *Kennedy v. Whitehurst,* 690 F.2d 951, 952 (D.C.Cir.1982), a short limitations period would have the unwholesome effect of undermining settlement negotiations and encouraging a wave of hastily filed suits for attorney fees.[16] Although defendants' counsel opined that parties can negotiate within the 30-day time requirements once those requirements are known, practically speaking, the court does not see how good faith negotiations can be carried on among the parties, some of whom are directed by boards, and some of whom may have to apportion a fee claim between them, within so short a time. The court knows from practical experience that after the parties have negotiated a settlement on substantive matters, ultimate voluntary dismissal may be delayed some time while the parties negotiate the collateral matter of attorneys fees. The court desires that all such negotiations be conducted in good faith, and not with an eye to making a short fee-claim statute of limitations a trap for the unwary.

Thus, defendants proffered statute of limitations is too short to vindicate the federal policies behind the fee-claim provision of the IDEA. Furthermore, the suggested 30-day limitations period is not designed for an analogous cause of action. The defendants' choice is designed for judicial review, and is therefore inappropriate for an entirely different cause of action, an independent claim for fees and expenses requiring examination of factual and legal bases different from those considered in the underlying administrative action.[17] Although the court has rejected defendants' proffered statute of limitations, it has not yet chosen the statute it believes to be most consistent with federal law and policy, *Wilson,* 471 U.S. at 266–67, 105 S.Ct. at 1941–42, and to be dictated by the inquiry required by *Wilson. Id.* at 268, 105 S.Ct. at 1942–43.

### c. The proper statute of limitations here

The statute this court finds most appropriate is that proffered by plaintiffs. Iowa Code § 614.1(4) provides a five-year statute of limitations for actions for which no other statute of limitations is specified and would certainly provide a sufficient period for vindi-

---

16. When it observed that fee-claim actions "should not result in a second major litigation," the Supreme Court was in part affirming federal policy that "[i]deally, of course, litigants will settle the amount of a fee." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. An excessively short statute of limitations for fee-claim actions would make such an ideal practically unattainable.

17. Having come to this conclusion, it is also appropriate for this court to explain its disagreement with the decisions in *Dell* and its progeny, which are the only appellate court decisions to address the question before this court and which, if followed, would have required this court to select Iowa Code § 17A.19(3) as the appropriate statute of limitations. The court does not find that the Seventh Circuit Court of Appeals in *Dell* ever made the proper three-part inquiry required by *Wilson,* or, if it did, it mischaracterized the "essence" of the fee claim action and failed to fully appreciate applicable federal policies. A fee-claim action under the IDEA does not require a "return to th[e] quagmire" of the merits of the administrative decision or even to the "state administrative environment" with which the federal court might be unfamiliar. *Dell,* 32 F.3d at

1064–65. A fee-claim action under § 1415(e)(4)(B) is an entirely independent action from the administrative proceedings in which the key inquiry is not whether any part of the administrative decision or the application of perhaps unfamiliar procedures is at issue, but an action in which the court considers the extent to which the party has "prevailed" in those administrative proceedings. *Hensley,* 461 U.S. at 433–35, 103 S.Ct. at 1939–40. The *Dell* court also inappropriately interposed the policy of prompt disposition of matters under the IDEA in its selection of a statute of limitations for fee claims under the IDEA, when there is no such urgency about a fee-claim proceeding. *Dell,* 32 F.3d at 1064–65. The "extent and quality" of representation, *id.,* are simply not the key inquiries in a fee-claim action, but, to reiterate, the degree to which the *party* has prevailed is. *Hensley,* 461 U.S. at 433–35, 103 S.Ct. at 1939–40. It seems to this court that *Wilson* dictates that the statute of limitations applied need have less "relevance to the administration of the IDEA itself," *Dell,* 32 F.3d at 1064–65, and must instead have some relevance to the "essence" of the specific claim involved and, furthermore, be consistent with federal policy and law applicable to that kind of claim. *Wilson,* 471 U.S. at 266–67, 105 S.Ct. at 1941–42.

cation of the federal policy underlying fee-shifting provisions of statutes creating federal rights. Also, the court finds no Iowa law that is sufficiently analogous to the IDEA and its fee-claims provisions to provide the basis for selecting the statute of limitations applicable to that state law for this federal cause of action. Federal law is the exclusive basis for the fee-claim action in question here, thus any Iowa law would be at best a compromise. The court is also mindful that in 1990, Congress passed a general statute of limitations of four years for actions pursuant to federal laws enacted after December 1, 1990, where Congress fails to specify some other limitations period. 28 U.S.C. § 1658; *Dell*, 32 F.3d at 1058 n. 11. The statute of limitations found in Iowa Code § 614.1(4) is closest to this federal statute of limitations both in duration and rationale.

■ The court recognizes that in similar situations, and for similar policy reasons this court has discussed, other courts have chosen instead the state's personal injury statute. *See James*, 720 F.Supp. at 1057. The court holds that, in the alternative, Iowa Code § 614.1(2), which provides a two-year limitations period for actions including "injuries to relative rights, whether based on contract or tort, or for a statute penalty," would be an appropriate choice, because it would serve the policy interests of the fee-shifting provisions of the IDEA.[18] The court has not selected this provision in the first instance, because, although the IDEA fee-claims provision may authorize fee-shifting as the result of injuries to relative rights, the court does not perceive the fee-shifting provision as a "penalty," but as a practical means of ensuring that parties whose rights under the

IDEA are violated may be able to engage counsel to help them vindicate those rights.[19]

The court therefore holds that under the applicable statute of limitations, plaintiffs' cause of action for recovery of attorney fees under § 1415(e)(4)(B) of the IDEA is not time-barred. Defendants' motion for summary judgment must be denied on the only ground asserted.

## V. CONCLUSION

After searching consideration of the inquiries the court must make to determine the applicable statute of limitations for a federal cause of action when Congress has failed to specify such a limiting provision, this court rejects defendants' proffered statute of limitations drawn from the judicial review provisions of the Iowa Administrative Procedures Act. The 30–day statute of limitations nominated by defendants is simply too short to vindicate the federal policies behind the fee-claim provision of the IDEA. It is also not designed for an analogous cause of action. The defendants' choice is designed for judicial review, and is therefore inappropriate for an entirely different cause of action, an independent claim for fees and expenses requiring examination of factual and legal bases different from those considered in the underlying administrative action. The court finds more appropriate statutes of limitations may be "borrowed" from Iowa's "catch-all" five-year statute of limitations in Iowa Code § 614.1(4), or Iowa's two-year personal injury statute of limitations in Iowa Code § 614.1(2). Because application of either of these statutes of limitations would mean that plaintiffs' actions are not time-barred, defen-

---

**18.** Selection of this statute of limitations instead of the "catch-all" five-year limitations period of Iowa Code § 614.1(4) would not produce a different outcome in this case. The Eighth Circuit Court of Appeals has not had a reason to decide the question of the statute of limitations applicable to an IDEA case, and this court, while disagreeing with the *Dell* decision in other respects, heartily agrees with the Seventh Circuit Court of Appeals that selection of a statute of limitations, a properly legislative task, is "not a methodology that fits comfortably with the exercise of judicial authority," *Dell*, 32 F.3d at 1058, and can be "at best uncertain and at worst arbitrary." *McCartney*, 21 F.3d at 174.

**19.** In both *Robert D.* and *Michael M.*, the limitations period selected was for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute." *Michael M.*, 686 F.Supp. at 1002; *Robert D.*, 688 F.Supp. at 864. However, Iowa lacks a similar limitations provision. Iowa Code § 614.1(1) provides a one-year limitations period for actions "to enforce the payment of a penalty or forfeiture under an ordinance." While the court is prepared to view the fee-shifting provisions of the IDEA as imposing a statutory "liability," it cannot view the fee-shifting under the IDEA as a "penalty or forfeiture" imposed by statute or ordinance.

dants' motions for summary judgment in each case are denied.

**IT IS SO ORDERED.**