**Franklin L. SMITH, Plaintiff,**

v.

**Theresa SQUILLACOTE,
et al., Defendants.**

**Civ. A. No. 89–2542 SSH.**

United States District Court,
District of Columbia.

Sept. 25, 1992.

---

**994**

Rafael Diaz, Asst. Corp. Counsel, D.C., Washington, D.C., for plaintiff.

Matthew B. Bogin, Bogin & Eig, Margaret A. Kohn, Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiff's and defendants' cross-motions for summary judgment and the oppositions thereto. This action concerns the legal standard governing the notice a public school system must give parents and guardians when it proposes to change a student's placement pursuant to the Individuals with Disabilities Education Act ("the IDEA" or "the Act"). 20 U.S.C.A. § 1400 *et seq.* (West 1990 &

Supp.1992).[1] Plaintiff, Superintendent of the District of Columbia Public Schools, contends that the Notices of Proposed Change in Educational Placement sent to defendants, the parents of a handicapped child, Karl Stand, were statutorily sufficient and that the hearing officer erred in finding the notices deficient. Further, plaintiff argues that the officer improperly denied plaintiff an opportunity to present evidence to establish the appropriateness of the proposed placement. Plaintiff requests that the Court reverse the hearing officer's findings, declare the notices statutorily sufficient, and remand the case to the administrative level for appropriate findings. Defendants request that the Court uphold the hearing officer's determinations. The Court grants plaintiff's motion and denies defendants' motion.

### Background
### Statutory Framework

The IDEA provides federal funds to assist state and local agencies in educating disabled children. Recipients of these funds are required to provide all disabled children within their jurisdiction with "a free appropriate public education." 20 U.S.C.A. § 1412(1). As a recipient, the District of Columbia Public Schools (DCPS) is required to develop an individualized education program (IEP) for each eligible disabled child, with input from the child's parents. The IEP must describe specific educational goals and requirements for the child and place the child in a school capable of fulfilling the child's needs. *See id.* §§ 1412(4), 1414(a)(5), and 1401(a)(20). The Act also imposes extensive procedural requirements on the DCPS to protect eligible children and their parents and guardians. *See id.* § 1415. The procedural requirements include written notice to the child's parents or guardians whenever the DCPS proposes to initiate or change the "identification, evaluation, or educational placement of the child...." *Id.* § 1415(b)(1)(C). Provisions must also be made for the parents or guardians to challenge the proposed action in a "due process hearing" before an impartial hearing officer. *Id.* § 1415(b)(2). Either party may appeal the decision of the hearing officer in a civil action in either a state court or a federal district court. *Id.* § 1415(e).

### Factual Background [2]

Karl is an eight-year-old disabled child living in the District of Columbia. In December of 1988, Karl's mother filed a Comprehensive Student Services form requesting that the DCPS provide Karl with special education and related services.[3] Pursuant to that request, the DCPS evaluated Karl. The DCPS issued a Confidential Multi-disciplinary Team Report (MDT Report), dated March 29, 1989, and provided a copy of the report to Karl's parents. The report concluded that Karl was a "multiply handicapped" child eligible for a free appropriate public education under the IDEA. On April 7, 1989, an IEP meeting was held, which Karl's parents and their Special Education Consultant attended.

Subsequently, an IEP was prepared for Karl, and on April 11, 1989, the DCPS sent Karl's parents a Notice of Proposed Change in Educational Placement. The notice proposed placing Karl in the Sharpe Health School, a public special education school for multihandicapped students. At-

**1.** This action was brought originally under the Education of the Handicapped Act ("EHA"). The name of the statute was changed in 1990 to the IDEA. *See* Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, § 901(a)(1), 104 Stat. 1103, 1142 (1990).

**2.** These facts, as well as those recited later in the Opinion, are derived from the record. They are undisputed unless otherwise noted.

**3.** In November of 1986, Karl's parents noticed changes in his personality, walking, and ability to feed himself. Karl was subsequently hospi-

talized and treated by various physicians and a psychologist at the Children's Hospital National Medical Center and Johns Hopkins Hospital. Karl was diagnosed as having developed myoclonic encephalopathy. The psychologist recommended that Karl receive physical, occupational, and speech therapies, and that he be placed in "a small, highly structured classroom with few distractions, and a student teacher ratio of 6 to 1 or better." (Defendants' Exh. 5.) Karl's mother apparently requested special education and related services for him on these grounds.

tached to the notice was a full page description of the program offered at the Sharpe Health School. The notice also stated in part that Karl was "multiply handicapped," that the DCPS had considered placements at the Lab School of Washington and the Ivymount School, and had rejected these options because an appropriate public placement was available.[4]

At the parents' request, an appropriateness hearing was held on June 28, 1989, to contest the proposed placement. At the conclusion of the hearing and later in a written opinion dated July 6, 1989, the hearing officer held that the DCPS had not complied with the procedural requirements regarding notice contained in 34 C.F.R. §§ 300.504, 300.505 (1991). Specifically, the hearing officer found that the DCPS should have explained in the notice why it had classified Karl as "multiply handicapped" and why Karl could not be placed in a program designed solely to meet one of his handicapping conditions. The hearing officer gave the DCPS two days to amend its notice.

The DCPS issued a revised notice on June 30, 1989. The revised notice explained in part that the DCPS considered Karl "multiply handicapped" because it found him to be both "learning disabled" and "other health impaired." The revised notice further explained in part that the DCPS considered these disabilities to be concomitant. Thus, the DCPS believed Karl would have difficulty achieving educationally in a program designed to deal with only one of his disabilities.

A second appropriateness hearing was held on July 31 and August 1, 1989. On August 11, 1989, the hearing officer again held that the notice was statutorily deficient. Due to the deficient notice, the hearing officer would not allow the DCPS to present evidence regarding the appropriateness of its proposed placement. However, the hearing officer allowed Karl's parents to present evidence regarding their preferred placement, the Ivymount School, a private school for learning disabled children. The hearing officer found the Ivymount School to be an appropriate placement and ordered the DCPS to place and fund Karl there for the 1989–1990 school year. The DCPS filed this action on September 11, 1989. In its complaint, the DCPS stated its position that first, the notice was sufficient and the hearing officer erred in ruling otherwise, and second, "any defect with DCPS' Notice and Revised Notice was non-prejudicial and should not have precluded DCPS from moving forward on the merits of the case...." (Compl. ¶ 27).[5]

### Discussion

Timeliness of the Appeal

■ Defendants have asked the Court to limit its review to the hearing officer's determination of August 11, 1989. Defendants contend that plaintiff's challenge to the July 6, 1989, determination was not timely because it was not filed within 30 days from that date.[6] Although an appeal of a hearing officer's determination under the IDEA generally must be brought within 30 days of a final decision, *see Spiegler v. District of Columbia,* 866 F.2d 461 (D.C.Cir.1989), " '[t]he philosophy of the Act is that a plaintiff must first exhaust the state administrative remedies provided under the Act, including the administrative appeals provisions, before bringing an action in federal court to challenge the evaluation and placement of a child.' " *Cox v. Jenkins,* 878 F.2d 414, 418 (D.C.Cir.1989) (quoting *Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981) and citing 20 U.S.C.A. § 1415(e)(2), (f)). Plaintiff filed this action

---

4. Both the Lab School and the Ivymount School are private schools.

5. The Court, on October 5, 1990, held that the case was moot because the 1989–1990 school year had passed. *See Jenkins v. Squillacote,* Civ. Action No. 89–2542, Mem. Order, at 2, 1990 WL 157876 (D.D.C. Oct. 5, 1990). The DCPS appealed and the Court of Appeals reversed, holding that the case was not moot in light of its belief

that the hearing officer's ruling was "capable of repetition, yet evading review." *Jenkins v. Squillacote,* 935 F.2d 303, 307 (D.C.Cir.1991). Thus, the Court of Appeals remanded "for consideration of the merits of [the DCPS's] claims concerning the sufficiency of the notice it provided the parents of Karl Stand." *Id.* at 308.

6. The complaint was filed on September 11, 1989.

within 30 days of exhausting the District of Columbia's administrative remedies under the Act. Thus, plaintiff's challenge to the hearing officer's determinations of both July 6 and August 11 are properly before the Court.

### Challenge to the Hearing Officer's Determinations

#### *The Standard and Scope of Review*

The IDEA provides for a civil action after administrative remedies have been exhausted. "Any party aggrieved by the findings and decision made" at the administrative level and who does not have the right to further administrative appeals "shall have the right to bring a civil action" in a state court or a federal district court "without regard to the amount in controversy." 20 U.S.C.A. § 1415(e)(2). The appropriate standard to govern the judicial inquiry is set forth in the Act. "[T]he court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* Thus, while some deference must be paid to the hearing officer, "the district court's authority under § 1415(e) to supplement the record below with new evidence, as well as Congress's call for a decision based on the 'preponderance of the evidence,' plainly suggest less deference than is conventional." *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir.1988).

■ The scope of the Court's inquiry was set forth by the Supreme Court in *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). In *Rowley* the Court stated that

> a court's inquiry in suits brought under sec. 1415(e)(2) is two-fold. First, has the State complied with the procedures set forth in the Act? Second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive

educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Id.* at 206–07, 102 S.Ct. at 3050–51 (footnotes omitted). This action involves one of the procedural requirements of the Act and therefore the Court need only address the first step of the inquiry.

#### *The Notice Requirement*

The issue before the Court is whether the hearing officer erred in ruling that the DCPS's notice and revised notice to defendants regarding the placement the DCPS proposed for their child were statutorily deficient. The DCPS contends that the hearing officer erred in two respects. First, the DCPS contends that the notices were sufficient. Second, the DCPS claims that even if the notices were deficient, defendants were not prejudiced and therefore the hearing officer should have allowed the DCPS to present evidence at the hearing. Defendants argue that the notices were statutorily deficient and that, regardless of actual prejudice, the hearing officer was correct in preventing the DCPS from presenting evidence. The Court finds that the notices were statutorily sufficient and therefore does not reach the issue of whether actual prejudice is required to invalidate a statutorily deficient notice.

The requirements for the content of the notice that the DCPS must send to parents when it proposes to initiate or change a placement under the IDEA are found in 34 C.F.R. § 300.505(a). According to this regulation, there are four requirements for the content of the notice. The issue before the Court concerns the second of these requirements, which is that the notice must include "a description of the action proposed or refused by the agency, an explanation of why the agency proposes or refuses to take the action, and a description of any option the agency considered and the reasons why those options were rejected." 34 C.F.R. § 300.505(a)(2).[7]

---

**7.** The regulation also requires that the notice include "(1) a full explanation of all the proce-

dural safeguards available to the parents ... (3) a description of each evaluation procedure, test

To determine what is necessary to fulfill this requirement, the Court examines the procedural requirements of the Act as a whole. Both Congress and the Supreme Court have emphasized the importance of the procedural requirements. In addition to the notice provision, Congress outlined extensive procedural safeguards in the IDEA.[8] Referring to these procedures, the Supreme Court has stated that

> the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process as it did upon the measurement of the resulting IEP against a substantive standard.

*Rowley*, 458 U.S. at 205–06, 102 S.Ct. at 3050–51 (citations omitted).

The purpose of the many procedural safeguards required by the Act was interpreted by the Supreme Court in *Honig v. Doe*. There the Court stated:

> [A]ware that schools had all too often denied [disabled] children appropriate educations without in any way consulting their parents, Congress repeatedly emphasized throughout the Act the importance ... of parental participation ... and establishe[d] various procedural safeguards that guarantee parents ... meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.

*Honig v. Doe*, 484 U.S. 305, 311–12, 108 S.Ct. 592, 597–98, 98 L.Ed.2d 686 (1988) (citations omitted). *See also School*

*Comm. of Burlington v. Department of Educ.*, 471 U.S. 359, 368, 105 S.Ct. 1996, 2001, 85 L.Ed.2d 385 (1985) ("Congress incorporated an elaborate set of what it labeled 'procedural safeguards' to insure the full participation of the parents...."); *Rowley*, 458 U.S. at 208, 102 S.Ct. at 3051 ("Congress sought to protect individual children by providing for parental involvement...."). Procedure plays an important role in the IDEA. The main purpose of the procedural safeguards, as interpreted by the Supreme Court, is to afford parents a meaningful role in the decision-making process regarding their disabled children's education.

■ In interpreting the specific purpose of the notice requirement, the Court notes that it is only one of many procedural safeguards. The notice requirement plays an important part in protecting the parents' role under the Act, but it is not meant to be the sole protector. The purpose of the notice requirement is to ensure that parents receive sufficient information about where the agency proposes to place their child and why that placement was chosen, so that parents may reach an informed conclusion about whether the placement will provide an appropriate education. The information in the notice, along with the IEP, the MDT Report, and all other information the agency has provided to the parents, should enable them to decide whether to contest the placement. If the notice provides such information, then it is sufficient.

*Sufficiency of the Notices to Defendants*

■ As noted, the hearing officer in this case found that the notices the DCPS sent to Karl's parents were deficient in two

---

record or report the agency uses as a basis for the proposal or refusal, and (4) a description of any other factors which are relevant to the agency's proposal or refusal." 34 C.F.R. § 300.-505(a).

**8.** *See generally* 20 U.S.C.A. § 1415. These procedural safeguards include the right of parents "to examine all relevant records with respect to the identification, evaluation, and educational placement of the child," § 1415(b)(1)(A); the right to "an independent educational evaluation

of the child" at public expense, *id.;* "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child," § 1415(b)(1)(E); the right to a due process hearing, § 1415(c); and the right to a civil action, § 1415(e). Congress also provided for extensive parental participation in both the development and the assessment of the IEP. *See* §§ 1400(c), 1401(19), 1412(7), 1415(b)(1)(A), (C), (D), (E) and 1415(b)(2).

respects. The hearing officer found that the notices should have explained, but did not, why the DCPS classified Karl as "multiply handicapped" and why Karl could not be placed in a program designed solely to meet one of his handicapping conditions. However, applying the proper standard of sufficiency to the facts of this case, the Court finds that the DCPS's original notice was not deficient in either respect. In addition, even if the first notice were flawed, the revised notice was sufficient and cured any previous flaw.

The term "multiply handicapped" refers to Karl's classification. The notice requirement, however, is intended to give the parents information regarding their child's placement, not his classification. Although Karl's parents have an interest in ensuring that his disabilities are properly classified, this interest is adequately protected by the Act's extensive provisions for parental involvement in the development of the IEP. *See supra* n. 7. And, if the parents find fault with the IEP, they may challenge it in a hearing. Therefore, the hearing officer erred in ruling that the notices were statutorily deficient because they did not explain the reasons for classifying Karl as "multiply handicapped."

■ The hearing officer also found the notices deficient for failure to explain why Karl could not be placed in a program designed solely for one of his handicapping conditions. The parents claim that both of the private school options that the DCPS rejected are so designed. The original notice stated only that these options were rejected because an appropriate public placement was available. It is clear that, given the purpose of the statute, the DCPS properly may reject private options when an appropriate public placement is available.[9] Therefore, the first notice was sufficient on this point. Accordingly, the revised notice, which explained additional reasons why the DCPS rejected these placements and chose to place Karl in the Sharpe Health School, was likewise sufficient.[10] Therefore, the notice that the DCPS provided to defendants regarding its reasons for rejecting these options was statutorily sufficient and the hearing officer erred in ruling otherwise.

*Conclusion*

For the reasons stated above, plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied. The Court remands the case for appropriate findings.

---

9. Of course, if the parents do not agree with the DCPS that the public placement is appropriate, they may challenge such a placement.

10. In addition to the full-page description of the Sharpe Health School contained in the original notice, the revised notice stated in part:

    [T]he Lab School of Washington is an educational facility primarily designed for learning disabled children. Karl's learning disability should not be addressed in isolation of his other health impairment needs. These disabilities are concomitant. In addition his placement with peers who do not exhibit such problems as truncal ataxia, drooling and poor feeding skills was determined to be potentially detrimental to Karl's academic functioning and social/emotional development. In previous school settings, Karl has suffered from poor peer acceptance because of these characteristics.

    Ivymount was rejected because of the amount of travel time required from Karl's home. The D.C.P.S. program is also more likely to provide Karl an opportunity for mainstreaming.