Oyin AKINSEYE, et al.   Plaintiff,

v.

DISTRICT OF COLUMBIA Defendant.

No. 01CV1769(RBW).

United States District Court,
District of Columbia.

March 19, 2002.

Myrna L. Fawcett, Esquire, Fawcett & Fawcett, Washington, DC, for Plaintiff.

Edward P. Taptich, Esquire, Office of Corporation Counsel, D.C., Washington, DC, for Defendant.

### *AMENDED MEMORANDUM OPINION AND ORDER* [1]

WALTON, District Judge.

### I. *BACKGROUND*

This action was brought on behalf of 121 minor children by either their parents, guardians, or court appointed education advocates to recover interests for the alleged late payments of their attorneys' fees that were voluntarily paid by the District of Columbia ("District") for legal services provided by their attorneys during administrative proceedings initiated under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The administrative proceedings were brought to require the District of Columbia Public Schools ("DCPS") to provide special education services to the 121 children. The complaint alleges that each of the cases was ultimately resolved during the administrative process, by either voluntary settlement agreements or due pro-cess hearings that in both circumstances resulted in underlying findings that the DCPS had violated the IDEA. Complaint at ¶ 8.[2] The complaint further contends that the DCPS acknowledged that all of the plaintiffs were prevailing parties because it reimbursed them for their attorneys' fees. Complaint at ¶ 2; *see also* Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint ("Defendant's Motion") at 4—5.

Defendant District of Columbia moves for the dismissal of the plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6) on two theories. First, the District argues that the claims for attorneys' fees by those plaintiffs whose cases were resolved by settlement agreements are barred by the Supreme Court's recent decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Second, the District contends that all of the plaintiffs' claims should be dismissed because they were all filed untimely. For the reasons set forth below, the Court grants defendants' motion in part, and denies it in part.

### II. *ANALYSIS*

#### A. *Standard of Review*

A complaint cannot be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The plaintiff must be

---

1. This opinion and order amends an opinion and order issued by this Court on February 1, 2001, in light of a decision rendered by the United States Court of Appeals for the Second Circuit on January 24, 2002, which this Court was unaware of when it issued its initial ruling. *See J.C. v. Regional School Dist. 10*, 278 F.3d 119 (2d Cir.2002).

2. It is unclear whether plaintiffs are contradicting ¶ 8 of the Complaint by indicating in their opposition to the defendant's motion to dismiss that "[t]his is also true of the two cases where there was no hearing or settlement..."

given "the benefit of all inferences that can be derived from the facts alleged," and the court must construe the complaint liberally in favor of the plaintiff. *Schuler v. Dep't of State,* 617 F.2d 605, 608 (D.C.Cir.1979); *see also, Sheppard v. Dickstein, Shapiro, Morin & Oshinsky,* 59 F.Supp.2d 27, 31 (D.D.C.1999). Accordingly, the complaint is afforded "spacious interpretation" under the federal rules. *Schuler,* 617 F.2d at 608.

## B.  *Buckhannon's Impact On The Plaintiffs Who Settled Their Claims*

The 67 plaintiffs who settled their administrative cases, along with all of the other plaintiffs in this case for that matter, can only prevail in their efforts to recover interests for the alleged late payments of their attorneys' fees if they had a statutory right to receive attorneys' fees. *See Bailey v. District of Columbia,* 839 F.Supp. 888, 893 (D.D.C.1993) (District of Columbia can be required to pay interest for late payment of attorneys' fees). In their complaint and in their Supplement to Complaint, plaintiffs admit that the settlement agreements they reached with the District, "rarely, if ever, included provisions for payment because reimbursement is a statutory requirement." (Complaint at ¶ 1; Supplement to Complaint at 4). However, plaintiffs argue that the District's reimbursement to the plaintiffs who settled their cases was an acknowledgment by the District that those plaintiffs prevailed. (Plaintiff's Supplement to Complaint at 4). Although the defendant does not directly address plaintiffs' position about how the payments should be construed, it does opine that *Buckhannon* contradicts plaintiffs' position regarding its obligation to pay the plaintiffs who settled their cases. In any event, even if the payments were acknowledgments of the DCPS's belief about its liability, that cannot have the legal effect of conferring a statutory right to receive the fees if one does not actually

exist. *See Key Tronic Corp. v. United States,* 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) (attorney fees generally not available "to a prevailing party absent explicit statutory authority") (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 262, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). The Court's task is to rule on the defendant's motion to dismiss under the standard for evaluating Rule 12(b)(6) motions. Therefore, the Court looks only to the complaint to inquire whether plaintiffs have advanced claims that will entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A Rule 12(b)(6) motion to dismiss should be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

To determine whether plaintiffs are entitled to recover interest on the attorneys' fees they received, the first inquiry the Court must make is whether plaintiffs were "prevailing parties" within the meaning of the IDEA. 20 U.S.C. § 1415(i)(3)(B) ("the court, in its discretion, may award reasonable attorneys' fees ... to the parents of a child with a disability who is the prevailing party."). The District argues that the Supreme Court's decision in *Buckhannon* forecloses the 67 plaintiffs who settled their cases from recovering interests under the IDEA on the late payment of the attorneys' fees they received because, as a result of the ruling in *Buckhannon,* these plaintiffs are not prevailing parties within the meaning of the statute. For the reasons set forth below, the Court now holds that the defendant is correct.

In *Buckhannon* the Supreme Court addressed the meaning of the term "prevailing party" as utilized in the typical attorneys' fee-shifting statute. 532 U.S. at 603, 121 S.Ct. 1835. In interpreting the term

"prevailing party," the Court rejected the "catalyst theory" which posits that a plaintiff who did not secure a judgment on the merits or a court-ordered consent decree can nevertheless qualify as a "prevailing party" if the plaintiff achieves the desired result in a case "because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601, 121 S.Ct. 1835. The Court held that to be a "prevailing party," and therefore entitled to recover attorneys' fees, the party seeking the fees must secure either a judgment on the merits or a settlement that is subject to enforcement by a court ordered consent decree. *Id.* at 604–05, 121 S.Ct. 1835. Voluntary settlement agreements, the Court ruled, absent a court enforceable consent decree, lack the "necessary judicial *imprimatur*" to confer prevailing party status to a plaintiff. *Id.* at 605, 121 S.Ct. 1835.[3]

Although the Court's analysis of the term "prevailing party" in *Buckhannon* was in the context of the Fair Housing Amendments Act ("FHAA") (42 U.S.C. § 3613(c)(2)) and the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12205), the Court suggested that its analysis would be applicable to all similar fee shifting statues. *See Buckhannon,* 532 U.S. at 603 n. 4, 121 S.Ct. 1835 ("We have interpreted these fee-shifting provisions consistently ... and so approach the nearly identical provisions here") (citation omitted). After *Buckhannon,* the Court's reasoning has been applied by other courts to other similar fee-shifting statues. *See, e.g., Smyth et al. v. Rivero,* 282 F.3d 268, 271–72 (4th Cir.2002) (applying the Supreme Court's rationale in *Buckhannon* to deny plaintiffs' attorneys' fees under 42 U.S.C. § 1988(b)); *New York State Federation of Taxi Drivers v. Westchester County Taxi & Limousine Comm'n,* 272 F.3d 154, 158 (2d Cir.2001) (same). In addition, the *Buckhannon* reasoning has specifically been applied to cases arising under the IDEA. *J.C.v. Regional School Dist. 10,* 278 F.3d 119, 123–124 (2d Cir.2002); *J.S. v. Ramapo Central School District,* 165 F.Supp.2d 570 (S.D.N.Y.2001); *John T. v. Delaware County Intermediate Unit,* No. CIV.A.98–5781, 2001 WL 1391500 (E.D.Pa. 2001); *Brandon K. v. New Lenox Sch. Dist.,* No.CIV.A.01–4625, 2001 WL 1491499 (N.D.Ill. Nov. 23, 2001); *Luis R. v. Joliet Township H.S. Dist.,* No.CIV. A.01–4798, 2002 WL 54544 (N.D.Ill. Jan. 15, 2002); *Baer v. Klagholz,* 346 N.J.Super. 79, 786 A.2d 907 (2001).

In *J.C. v. Regional School Dist. 10,* 278 F.3d 119 (2d Cir.2002), the Second Circuit applied the reasoning of *Buckhannon* to a case similar to the present case. In *J.C.,* the parents of a child in need of special education services sued the school district for attorneys' fees after they had hired an attorney to represent them in an administrative hearing because the school board did not agree initially that the child was suffering from an educational disability. *Id.* at 122. Prior to the hearing, the school

---

**3.** The Fourth Circuit recently elaborated on the difference between voluntary settlement agreements and court ordered consent decrees. *See Smyth et al. v. Rivero,* 282 F.3d 268, 271 (4th Cir.2002). The Court noted that it doubted the Supreme Court's ruling in *Buckhannon* was intended to hold that the words "consent decree" must literally be utilized to indicate a settlement agreement that would be enforceable by the courts. Rather, the court opined that the Supreme Court's definition of "prevailing party" would be satisfied by a settlement agreement "embodied in a court order such that the obligation to comply with its terms is court-ordered ..." 282 F.3d 268, 2002 WL 245978, at * 10. The court further stated: "We will assume, then, that an order containing an agreement reached by the parties may be functionally a consent decree for purposes of the inquiry to which *Buckhannon* directs us, even if not entitled as such." *Id.* (citing *Buckhannon,* 121 S.Ct. at 1840).

board's planning team held a meeting at which it determined that the child did in fact suffer from educational disabilities. *Id.* Both parties then concluded that there were no further issues for resolution and "jointly requested an [administrative] hearing for the sole purpose of adopting the [planning team's] results as an official decision and order." *Id.* At the hearing, however, the school board declined to adopt the planning team's results as an official order, fearing that doing so would expose the school system to liability for attorneys' fees. *Id.* Instead, the hearing officer merely read the settlement agreement into the record as an agreement between the parties and issued a final written decision dismissing the hearing as moot. *Id.*

Although the district court found that the parents were the prevailing party and granted the parent's motion for attorney fees pursuant to the IDEA, the Second Circuit reversed, holding that *Buckhannon* (which was issued subsequent to the district court's decision), precluded a finding that the parents were the "prevailing party" and therefore prohibited an award of attorneys' fees under the statute. *Id.* at 124. Like the plaintiffs in *J.C.*, plaintiffs argue in the present case that the IDEA differs from other statutes with fee-shifting provisions and requires a different interpretation of the term prevailing party because the IDEA's "multi-tiered administrative process [is] designed to function without any court involvement." *Id.* The Second Circuit found this argument "unpersuasive" because the ADA, which was at issue in *Buckhannon,* also requires that the parties "exhaust administrative processes prior to litigation." *Id.* The plaintiffs in *J.C.* also argued that the IDEA is designed to encourage informal resolution of student educational placements, which

would be undermined by applying *Buckhannon* to settlements under the IDEA because parents would avoid settlements at the Individualized Educational Placement (IEP) stage and pursue due process hearings or civil litigation where they could recover attorneys' fees. *Id.* In rejecting this argument, the court noted that even prior to *Buckhannon,* Congress did not permit recovery of attorneys' fees for participation in IEP proceedings that were not held pursuant to an administrative proceeding or judicial action. *Id.* (citing 20 U.S.C. § 1415(i)(3)(D)(ii)). Moreover, the Court opined that encouraging the participation of lawyers in the planning team process would jeopardize the atmosphere of compromise and cooperation, which is a critical component of the planning team process. *Id.* at 124–125.[4] Thus, the court precluded the parents' recovery of attorney fees, despite the fact that the district court's award of attorneys' fees had occurred prior to the Supreme Court's issuance of *Buckhannon.*

This Court is not obliged to follow the Second Circuit's holding in *District of Columbia v. American Excavation Co.,* 64 F.Supp. 19, 19–20 (D.D.C.1946). However, it is persuasive authority. *Id.* As such, in the absence of a ruling on the issue by this Court's Circuit Court of Appeals, or any other Federal Circuit, this Court will follow the lead of the Second Circuit. However, the Court does not do so without reservations.

Despite the Second Circuit's ruling, whether the Supreme Court intended for *Buckhannon* to encompass administrative agency level settlement agreements is not, in this Court's view, absolutely clear. *Buckhannon* merely established a benchmark for when a party can be classified as a prevailing party after a court action

---

4. Interestingly, the Court made this statement despite the district court's denial of attorneys' fees for time spent preparing for and attending the planning team meetings. *Id.* at 122.

has been initiated. And requiring, as the Supreme Court did, that a party who settles a case after judicial proceedings have begun can only acquire prevailing party status if the settlement agreement is judicially enforceable is not an unreasonable prerequisite. Acquisition of such an agreement through judicial approval of it is readily available to the parties since all that needs to be done is the submission of the agreement to the presiding judge for approval.

Access to a court for the purpose of obtaining a judicially enforceable settlement agreement is not readily available, however, when settlement occurs at the administrative agency level.[5] Rather, access is impossible because judicial approval cannot be obtained where a court case has not yet been filed. Thus, application of *Buckhannon* to agency level settlement agreements creates an impregnable barrier to the recovery of attorneys' fees by children and parents who settle their cases at that stage.[6]

This reality concerns the Court because language requiring acquisition of a judicially enforceable agency level settlement agreement as a prerequisite for acquiring prevailing party status is not contained in the IDEA's attorneys' fee provisions. Reading this requirement into the statute will certainly have a chilling impact on the number of children and their parents who will receive legal representation at the agency level and may well reduce the number of cases where early settlement of agency proceedings is achieved. This Court's 18 year experience as a judge in the District of Columbia local court system convinces it that these consequences are virtually inevitable.

Most of the children in the District of Columbia who need the services required by the IDEA have families with minimal financial resources. Accordingly, they lack the financial means to retain legal representation in IDEA proceedings. And without legal assistance, the likelihood of receiving the special education services

---

**5.** It has been held that a settlement agreement that was "transcribed and entered into the due process hearing as a formal Agreed Order of the Hearing Officer" changed the legal status of the parties and thus might entitle the plaintiffs to prevailing party status. *Brandon K. v. New Lenox School Dist.*, No. CIV.A.01–C–4625, 2001 WL 1491499, at * 2 (N.D.Ill. Nov. 23, 2001); *Jose v. Joliet Township H.S. Dist.*, No. CIV.A.01–C–4798, 2001 WL 1000734, at *1–2 (N.D.Ill. Aug. 29, 2001) (holding that plaintiff "may be entitled to prevailing party status" where the mediation agreement entered into by the parties was read into the record before a hearing officer). Despite these rulings, it does not appear to this Court that entering a settlement agreement into the record before a hearing officer at an administrative hearing or reading it into the record before the hearing officer would afford prevailing party status to a party under a literal reading of *Buckhannon*. But this Court does believe that in order for the Supreme Court's ruling in *Buckhannon* to comport with Congress' intent that parties who settle their cases at the agency level be eligi-

ble to recover attorney's fees under the IDEA in certain situations, the Supreme Court would seemingly have to temper its position as articulated in *Buckhannon* to permit a party to obtain prevailing party status absent actual judicial involvement of some type. Maybe that involvement is satisfied by hearing officer participation in the settlement process, but *Buckhannon* does not seem to permit that since the hearing officer is not a judicial official.

**6.** The Court notes that, even assuming a plaintiff could find a predicate for filing an action in order to seek the Court's assistance in obtaining a judicially enforceable consent decree (a position this Court cannot fathom), a case brought prior to the completion of the administrative process would have to be dismissed for the plaintiff's failure to exhaust his or her administrative remedies. Thus, access to the court for the purpose of seeking a court ordered consent decree, or its equivalent, is an impregnable barrier that no IDEA plaintiff can realistically overcome.

needy children require will be greatly diminished. *See Curtis K. v. Sioux City Community Sch. Dist.*, 895 F.Supp. 1197, 1218–19 (N.D.Iowa 1995). And without receipt of these services, the underlying purposes for the enactment of the IDEA will be frustrated.

Moreover, the integrity of lawyers who provide education law services to children and their families need not be impaired to appreciate that if legal fees cannot be obtained in proceedings initiated under the IDEA, that the number of settlements at the agency level may decline. This result would also be inconsistent with the objectives of the IDEA because early settlement of IDEA claims benefit children with special educational needs, for whom the IDEA was enacted. *Dell v. Bd. of Ed.*, 32 F.3d 1053, 1063–64 (7th Cir.1994); *Hawaii v. Dep't of Ed.*, 695 F.2d 1154, 1157 (9th Cir.1983). The sooner children receive special education services, the more likely it is that they will achieve the IDEA's goals. *Id.*

Putting another barrier in the path of children who are in need of special education services is not something this Court relishes. As a former local court judge, this Court has seen first hand the inadequacy of education services provided to many children in the District of Columbia. *Calloway v. District of Columbia*, 216 F.3d 1, 4 (D.C.Cir.2000). And further, by the time some of these children ultimately receive needed services, valuable and unretrievable time has been lost as cases grinded through the administrative process at an intolerably slow pace. *Id.* The end result for many of these children is that they never develop to their full educational achievement level.

■ Nonetheless, despite these concerns that raise, in the Court's opinion, serious questions about the wisdom of expanding the reach of *Buckhannon's* judicial enforceability requirement to agency level settlement agreements, this Court yields to the reasoning of the Second Circuit. Moreover, unless the Supreme Court tempers its categorical rejection in *Buckhannon* of the proposition that a plaintiff can acquire prevailing party status because the defendant voluntarily agreed to afford the relief sought by plaintiff, this Court concludes that it must side with the Second Circuit. *Buckhannon* seems to leave no room to side-step the Court's conclusion that for a settlement agreement to elevate a plaintiff to the status of a prevailing party, it must bring about the " 'material alteration of the legal relationship of the parties,' " 532 U.S. at 604, 121 S.Ct. 1835 (citations omitted), which, as stated before, the Court said requires the *"imprimatur"* of the court. *Id.* at 605, 121 S.Ct. 1835. That is not something the plaintiffs who settled their claims obtained. Accordingly, defendants' motion to dismiss those claims brought by the plaintiffs who voluntarily settled their cases with defendant is granted.

### C. *The Statute of Limitations Challenge*

The District argues that all of the plaintiffs' court actions should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because they were untimely filed. This argument is predicated on the belief that the filing requirement for the actions is covered by the 30–day limitation period of District of Columbia Court of Appeals Rule 15(a), which governs petitions to review agency orders. On the other hand, plaintiffs encourage the Court to apply the 3–year limitation period of D.C.Code § 12–301(8) (2001), which applies to actions "for which a limitation is not otherwise prescribed..." *Id.* Although several Circuit Courts of Appeals and a number of District Court judges have addressed the statute of limitations question before the Court, the issue does not seem to have

been addressed by any Court in this Circuit.

■ The parties, as they must, concede that the IDEA is devoid of a statute of limitations for actions brought to recover attorney fees under 20 U.S.C. § 1415(i)(3)(B), *see King v. Floyd County Bd. of Educ.*, 228 F.3d 622, 623 (6th Cir. 2000), and for that matter other actions brought under the IDEA. *See Spiegler v. District of Columbia*, 866 F.2d 461, 463 (D.C.Cir.1989). When "Congress has [failed to] establish[ ] a statute of limitations for a federal cause of action, ... federal courts may 'borrow' one from an analogous state cause of action, provided that the state limitation period is not inconsistent with underlying federal policies." *Spiegler*, 866 F.2d at 463–64 (citing *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 240, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)). *See also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 171–72, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (although "resort to state law remains the norm for borrowing limitations periods" federal statutes of limitations can be utilized when it is more appropriate to do so).

The District relies significantly on this Circuit Court's decision in *Spiegler v. District of Columbia*, 866 F.2d 461, which involved a DCPS hearing officer's substantive ruling, rather than a claim to recover attorney fees under IDEA, and cases from other federal circuits that have applied statutes of limitations with restricted time requirements in attorney fee cases brought under the IDEA, as support for the adoption of the 30–day time period of District of Columbia Court of Appeals Rule 15(a). Citing *King v. Floyd County Board of Education*, 228 F.3d 622, 627 (6th Cir.

2000)(30 days); *Powers v. Indiana Dep't of Educ.*, 61 F.3d 552, 557 (7th Cir.1995) (30 days); *Rosemary B. v. Bd. of Educ.*, 52 F.3d 156 (7th Cir.1995) (120 days); *Dell v. Bd. of Educ.*, 32 F.3d at 1059–60 (120 days); *McCartney v. Herrin Cmty. Unit Sch. Dist. No. 4*, 21 F.3d 173, 175 (7th Cir.1994) (120 days); *Mayo v. Booker*, 56 F.Supp.2d 597, 598 (D.Md.1999) (180 days); *Wagner v. Logansport Cmty. Sch. Corp.*, 990 F.Supp. 1099, 1102 (N.D.Ind.1997) (30 days); *Gertel v. Sch. Comm. of the Brookline Sch. Dist.*, 783 F.Supp. 701, 704–05 (D.Mass.1992) (30 days); *Smith v. Squillacote*, 800 F.Supp. 993, 996–97 (D.D.C.1992) (30 days). The District opines that the shorter 30–day limitation period is the appropriate statute of limitations for this Court to borrow because actions to recover attorney fees are ancillary to administrative decisions concerning education placements. *See King*, 228 F.3d at 626; *Powers*, 61 F.3d at 552; *Reed v. Mokena Sch. Dist. No. 159*, 41 F.3d 1153 (7th Cir.1994); *Dell*, 32 F.3d at 1053; *Amann v. Town of Stow*, 991 F.2d 929 (1st Cir.1993); *Mayo*, 56 F.Supp.2d at 597; *Wagner*, 990 F.Supp. at 1099.

On the other hand, plaintiffs argue that the District's reliance on *Spiegler* is misplaced because the nature of the relief sought there—review of an agency decision—and the nature of the relief requested in this case—the award of interest for the purported late payment of attorney fees—distinguishes the cases. This proposition leads plaintiffs to the position that the 3–year catch-all limitation period of D.C.Code § 12–301(8) is the proper statute of limitations for the court to apply in this case. They argue that the District has mischaracterized their actions as petitions to review adverse administrative rulings. Rather, they point out that they actually received the relief they sought in the administrative proceedings. Accordingly, they contend that their claims

should not be considered as ancillary to their administrative proceedings, but as independent actions for the reimbursement of the attorneys' fees they incurred during the administrative process.

As an additional reason for rejecting the District's position, plaintiffs suggest that application of the 30–day limitation period would have resulted in the need for the filing of multiple lawsuits, rather than the one case that was filed on behalf of all plaintiffs. This result, they note, would have occurred because the various parties were paid at different times and therefore a 30–day limitation period would have required the filing of multiple cases before the different corresponding limitation dates in each case became operable. Whereas, because all of the parties were paid within the 3–year limitation period they champion, only one case needed to be filed to avoid the consequences of a statute of limitations violation. As such, plaintiffs contend that adopting the 3–year limitation period will have advanced the need to conserve judicial resources.

Circuit Courts of Appeals that have ruled consistent with the District's position and borrowed state limitations provisions that require the expeditious filing of court actions to recover attorney's fees under the IDEA are the Sixth Circuit, *King*, 228 F.3d at 622, the Seventh Circuit, *see e.g.*, *Powers*, 61 F.3d at 552; *Reed*, 41 F.3d at 1153, and the Ninth Circuit, *Hawaii Dep't of Educ. v. Valenzuela*, 695 F.2d at 1154. Numerous district courts have reached the same conclusion. These rulings, have been based on the determination that the attorneys' fee actions were ancillary to the underlying administrative proceedings and are therefore subject to state law limitation periods for judicial review of administrative agency decisions. *King*, 228 F.3d at 626; *Powers*, 61 F.3d at 556. And borrowing the short limitation periods common to administrative proceedings has

been found by these courts to be consistent with the IDEA's legislative scheme that encourages the expeditious resolution of matters regarding disabled students' education needs. *See, e.g., Dell v. Bd. of Educ.*, 32 F.3d at 1063–64; *Valenzuela*, 695 F.2d at 1157.

Numerous federal courts agree with plaintiffs' position that borrowing longer limitation periods in attorney's fee cases under the IDEA is the prudent approach. *Dickerson v. Brodgen*, 80 F.Supp.2d 1319, 1322 (S.D.Ala.1999) (2 years); *B.K. v. Toms River Bd. of Educ.*, 998 F.Supp. 462, 473 (D.N.J.1998) (applying reasonableness standard and concluding that filing of attorney fee action within 2 years of settlement was reasonable); *J.B. v. Essex–Caledonia Supervisory Union*, 943 F.Supp. 387, 391 (D.Vt.1996) (borrowed Vermont's 6–year–catch–all statute of limitations); *Robert D. v. Sobel*, 688 F.Supp. 861, 864 (S.D.N.Y.1988) (3 years); *Michael M. v. Bd. of Educ.*, 686 F.Supp. 995, 1002 (E.D.N.Y.1988) (3 years). However, only one Circuit Court of Appeals that has addressed this precise question agrees. *Zipperer v. Sch. Bd. of Seminole County, Florida*, 111 F.3d 847 (11th Cir.1997).

The Court in *Zipperer* distinguished between a substantive cause of action brought under 20 U.S.C. § 1415(e)(2) (now codified in 20 U.S.C. § 1415(i)(2)(A)) and what it considered as an "independent" action for attorney fees under 20 U.S.C. § 1415(e)(4) (now codified as 20 U.S.C. § 1415(i)(3)(B)). *Id.* at 851. Concluding that the district court, rather than the administrative agency, has exclusive jurisdiction to award attorney fees, the Court held that an appeal from an administrative decision by a prevailing party for attorney's fees is not an available remedy under Section 1415. *Id.* This ruling resulted in the Court's ultimate holding that the claim for attorney fees was not analogous to the

appeal of an agency hearing, but is rather an independent action predicated on statutory liability. *Id.* Accordingly, the Eleventh Circuit borrowed Florida's four year statute of limitations for use in actions to recover attorneys fees in IDEA cases. *Id.* at 852–53.

The rationale underlying the Eleventh Circuit's holding was its assessment that resolving claims for attorney fees was less urgent than other relief sought under the IDEA. Moreover, the Court thought that a longer limitation period will enhance the potential that disabled children will receive appropriate public education because it believed that a longer limitation period will promote greater attorney representation of parents in IDEA proceedings. Various district courts that have ruled consistent with the Eleventh Circuit's holding in *Zipperer,* have basically employed the same analysis as the *Zipperer* Court.

Although, as already indicated, the precise statute of limitations question the Court has been asked to decide in this case does not appear to have been addressed by any court in this Circuit, the Circuit Court of Appeals for the District of Columbia did address a similar question in *Spiegler v. District of Columbia,* 866 F.2d 461, albeit in a different context. As noted above, *Spiegler* did not involve a situation concerning attorney fees, but rather involved a civil action that had been brought to challenge the substantive findings and decision of DCPS under the predecessor statute of the IDEA, the Education of the Handicapped Act ("EHA"), 20 U.S.C. §§ 1400–1485. The challenge was brought pursuant to § 1415(e)(2) of the EHA, which is now 20 U.S.C. § 1415(i)(2). The Circuit Court of Appeals held that the proper statute of limitations to borrow was the same 30–day District of Columbia limitation period advanced by the District in this case, but conditioned its application on whether parents or guardians of a disabled child are provided notice of the availability of judicial review and the limited amount of time they have to initiate court proceedings. *Id.*

In reaching its conclusion in *Spiegler,* the Court also noted that it was unable to find a federal statute of limitations that "'clearly provide[d] a closer analogy than available state statutes,'" *Spiegler,* 866 F.2d at 464 (quoting *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. at 172, 103 S.Ct. 2281), and nothing has occurred since *Spiegler* that would permit this Court to conclude otherwise. The *Spiegler* court construed the parents' challenge in that case to the substantive decision of the DCPS concerning the education needs of their son as "more analogous to appeals from administrative agencies than to a cause of action 'for which a limitation [period] is not otherwise specifically prescribed.'" *Spiegler,* 866 F.2d at 465 (quoting the language of D.C.Code § 12–301(8)). Moreover, the Court concluded that the 30–day agency review limitation period was not inconsistent with the policies underlying the EHA, when "combined with a duty by the District to inform hearing participants of the short period..." *Id.* at 466. And this assessment was influenced by the EHA's intent, due to the rapid development of young children, "to ensure prompt resolution of disputes regarding appropriate education for handicapped children," including "the judicial review process." *Id.* at 467.

Because the *Spiegler* Court was concerned only with a substantive challenge of an administrative ruling regarding a disabled child's education placement, an action that would now fall under 20 U.S.C. § 1415(i)(2), rather than an action for attorney fees initiated pursuant to 20 U.S.C. § 1415(i)(3)(B) to recover such fees arising out of administrative proceedings under the IDEA, *Spiegler* is controlling authority

only if the Court follows those cases that have concluded that attorney fee actions are ancillary to underlying IDEA administrative proceedings and therefore subject to state law limitation periods that govern judicial review of administrative agency decisions. As demonstrated already, the courts have split on this question because they do not agree on whether attorney fee claims are "another phase of the administrative proceeding," *see, e.g., King,* 228 F.3d at 625, which these Courts conclude are more suitable for coverage by shorter limitation periods, *see, e.g., id* at 626; *Powers,* 61 F.3d at 555, or whether such claims are "separate and different in kind from an action appealing the underlying administrative decision," *Curtis K. v. Sioux City Cmty. Sch. Dist.,* 895 F.Supp. at 1211, that do not require prompt resolution to promote the IDEA's goals of securing expeditious education services for disabled children. *See, e.g., Zipperer,* 111 F.3d at 851. As the Court in *Powers* recognized, resolution of this issue "is difficult," and the divergent views of existing precedent makes the decision even more challenging. 61 F.3d at 555–56.

Nevertheless, this Court has settled on borrowing a longer limitation period. This conclusion is based on the Court's agreement with those courts who reject the position that expedited resolution of attorney fee disputes advance the goals of insuring that children receive proper education services promptly. What is more likely to ensure that the IDEA's goals are achieved is the acquisition of quality legal representation by parents and guardians of disabled children. *Zipperer,* 111 F.3d at 852; *Curtis K. v. Sioux City Cmty. Sch. Dist.,* 895 F.Supp. at 1218–20 ("Federal law, policy, experience, and common sense, make plain that, practically speaking, in today's complex society, attorneys are key to obtaining relief from violations of individual and group rights in many contexts."). Litigating claims under the

IDEA is not a simple matter. Surely, parents and guardians are likely to fare much better if they wade into the complex sea of education law with the safety net of an attorney. Moreover, a longer limitation period is better suited for attorney fee actions because:

> the 30–day statute of limitations suggested by defendants provides no realistic opportunity for the negotiation and compromise of fee claims prior to the filing of an independent [IDEA] action for fees in federal court ... [A] short limitations period would have the unwholesome effect of undermining settlement negotiations and encouraging a wave of hastily filed suits for attorney fees.

*Curtis K. v. Sioux City Cmty. Sch. Dist.,* 895 F.Supp. at 1219–20. And interestingly, plaintiffs note that they would have been forced to file a number of individual suits, rather than the single lawsuit that was filed on behalf of all plaintiffs, if a 30–day limitation period had been in force. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint at 11.

■ Having concluded that a limitation period of more than 30 days should be borrowed by the Court, an exhaustive search for the most analogous District of Columbia statute of limitations was undertaken. This search has failed to uncover any limitation period that is any more appropriate to apply to the claims in this case than the 3–year limitation period of D.C.Code § 12–301(8) proffered by plaintiffs. In that regard, there appears to be no District of Columbia statute of limitations that specifically controls when actions for attorney fees must be initiated. Accordingly, there are no limitation periods that mandate when an attorney fee action must be filed and therefore the 3–year limitation period of D.C.Code § 12–301(8), which covers causes of actions "not

otherwise specifically prescribed...," is the statute most analogous to the claims that have been filed in this case by plaintiffs. Accordingly, that is the limitation period the Court will borrow.

## D. *The Accrual of the Limitation Period*

 Finally, the Court must decide when the 3–year limitation period started to run. As a general rule, a "statute of limitation begins to run 'at the time when a prospective plaintiff knows or should know through the exercise of due diligence of [his] right to recover.'" *Kropinski v. World Plan Executive Council—US*, 853 F.2d 948, 956 (D.C.Cir.1988) (quoting *Baker v. A.H. Robins Co.*, 613 F.Supp. 994, 996 (D.D.C.1985)). Ordinarily, the statutory time limit for an attorney fee claim under the IDEA would start to run when the services provided by the attorney were completed and the parent or guardian qualified as the "prevailing party" under 20 U.S.C. § 1415(i)(3)(B). However, here, all of the plaintiffs were paid the fees they demanded and they are only seeking interests for the alleged late payment of those fees. Thus, the Court concludes that plaintiffs' causes of action did not accrue until they actually received the payments and at that time realized that interest had not been included. *Cf. Powers*, 61 F.3d at 558 (statute of limitations started to run when parents' request for attorneys' fees was finally denied). Therefore, the District's statute of limitations challenge must be rejected since this action was initiated within 3 years after the plaintiffs received reimbursement for their attorneys' fees.

## III. *CONCLUSION*

In summary, the Court concludes that the Defendant's Motion to Dismiss Complaint must be denied because the 3–year catch-all provision of D.C.Code § 301(8) is the appropriate statute of limitation period to borrow from the District of Columbia for application to attorney fee claims initiated under the IDEA. And, because all of the claims in this case were initiated within 3 years after receipt of the attorneys' fee payments from the defendant, all of the plaintiffs actions survive the District's Rule 12(b)(6) dismissal motion.

WHEREFORE, it is on this 18th day of March, 2002, hereby ORDERED that Defendant's Motion to Dismiss Complaint is granted in part and denied in part.